THE STATE v. CUNNINGHAM, *Appellant.*

1. **Practice**: QUALIFICATION OF JUROR : FORMING AND EXPRESSING OPINION. A juror who states on his examination that he has formed and expressed an opinion as to the guilt or innocence of the accused, and that the opinion has been formed from rumor or newspaper reports, and it will require evidence to remove it, is not incompetent, provided it appears to the satisfaction of the court that such opinion will readily yield to the evidence in the case and that the juror will determine the issues upon the evidence adduced in court, free from bias.

The State v. Cunningham.

2. —— : —— : ——. The question of the juror's bias is one of fact to be tried by the court, and its finding ought not to be disturbed unless it is clearly against the evidence.

3. —— : —— : ——. All doubts should be resolved in favor of the finding of the trial court.

4. —— : —— : ——. The question of the qualification of the juror must be determined from his whole examination, including his demeanor on the witness stand, and not from a few catch words drawn from him by a series of questions.

5. **Criminal Law**: RAPE. In a prosecution for rape it must be shown that force was used by the defendant and that the woman did not consent; whether she did or did not consent is, in most cases to be inferred from the surrounding circumstances.

6. —— : ——. If consent is given after the assault and before the act is completed by penetration, it will not be rape. But submission from fear or because the mind of the woman is overcome by fright is no consent.

7. —— : —— : CONSENT. Whether or not the woman did consent is a question for the jury to determine.

8. —— : —— : ——. The mere fact that a woman is of weak mind does not disable her from consenting to the act. She may have less intellect than is required to make a contract and may yet so consent to a carnal connection that it will not constitute rape in the man.

9. —— : —— : ——. Where, in a prosecution for rape, it is shown that the woman was possessed of a weak and disordered mind, but had mental capacity to attend to her household duties at all times and to care for her small children and visit acquaintances with her husband, the question of whether she consented to the act is properly submitted to the jury.

10. —— : —— : —— : INSANITY. To constitute rape the act must be intended to be done with force and without the woman's consent, and, if done with these intentional elements, it can make no difference that the woman was insane and that the accused did not know she was incapable of giving her consent.

11. —— : —— : —— : ——. But if the man does not know that the woman is insane, and, from her conduct, is led to believe he has her consent, the act is not rape.

*Appeal from St. Louis Criminal Court.*—HON. J. C. NORMILE, Judge.

AFFIRMED.

*C. P. & J. D. Johnson* and *Silver & Brown* for appellant.

1. Defendant's challenges to the jurors, Worsley, Sceele and Meyer, should have been sustained. They were incompetent to form either a part of the panel, or to sit in the trial of the cause. R. S., sec. 1897. This case does not come within the rule of a long line of decisions in this state, of which *State v. Bryant*, 92 Mo. 273, is the last. In those cases the jurors had no bias or prejudice. Here they had, which it would take evidence to remove, and they further said that defendant would have to prove himself innocent, and it is submitted that these jurors were disqualified and that the statute must control. They could not form a part of the panel or serve on the trial. *State v. Culler*, 82 Mo. 623. (2) There was no evidence to sustain the verdict. There was not that force on the part of the defendant and resistance on the part of the woman necessary to constitute the crime of rape. *State v. Burgdorf*, 53 Mo. 65; *Commonwealth v. McDonald*, 110 Mass. 405; *Brown v. People*, 36 Mich. 203; *People v. Brown*, 47 Cal. 447; *People v. Dohring*, 59 N. Y. 374; Roscoe's Crim. Ev. [7 Ed.] p. 878. (3) Even if defendant used force in taking Mrs. Gutting from her house, the crime was not at that time accomplished, and her subsequent conduct is conclusive of acquiescence, under circumstances which show that the least objection on her part would have availed her. *Reg. v. Hallet*, 9 C. & P. 748; Bish. on Crim. Law [7 Ed.] sec. 1122, p. 633; *Conners v. State*, 47 Wis. 537; *Whittaker v. State*, 50 Wis. 518. (4) It is impossible, under the facts of this case, that there should have been any rape, except upon the theory that Mrs. Gutting was so insane as to be incapable of giving consent. In such case, it must be shown, in order to convict, that the defendant had knowledge of her mental incapacity. 1 Wharton's Crim. Law

[9 Ed.] sec. 560; *Croswell v. People*, 13 Mich. 427; *State v. Tarr*, 28 Iowa, 379; *Commonwealth v. Burke*, 105 Mass. 376; *Reg. v. Barratt*, 12 Cox's C. C. 498. There is no pretense that he had any such knowledge, and no evidence to show that her slight mental aberration, as manifested previous to the alleged outrage; was known, at that time, to any one but her husband. (5) The court erred in failing to instruct the jury upon the question of Mrs. Gutting's insanity and the necessity of defendant's knowledge of it in order to sustain a conviction. Authorities under last paragraph, *supra*. (6) Under the facts of this case, defendant's knowledge of Mrs. Gutting's insanity is an essential ingredient of the crime charged, and it was the duty of the court to instruct the jury upon the law of that branch of the case, although not requested to do so by the defendant. For its failure to do so it committed reversible error. *State v. Branstetter*, 65 Mo. 149; *State v. Banks*, 73 Mo. 592; *State v. Palmer*, 88 Mo. 568. (7) Under the statute (R. S., sec. 1253) there can be no rape without the exercise of force sufficient to overcome the utmost reluctance and resistance on the part of the woman. *Crosswell v. People*, 13 Mich. 427; *Baldwin v. State*, 15 Tex. App. 275; *Rodriginz v. State*, 20 Tex. App. 542. And this is so, even where the woman was suffering from dementia at the time of the alleged assault. *Rodriginz v. State*, 20 Tex. App. 542. To rape, it is essential that the act should be intended to be done with force and without the woman's consent. 1 Whar. C. L. [9 Ed.] sec. 562. If the defendant did not know that Mrs. Gutting was insane, and she consented, he intending to use no force, the crime was not made out. " Where the man is led from the conduct of the woman to believe that he is not committing a crime known to the law, the act of connection cannot under such circumstances amount to a rape." Roscoe's Crim. Ev. [7 Ed.] p. 878.

VOL. 100—25

*John M. Wood*, Attorney General, for the State.

(1) The jurors challenged by defendant on their *voir dire* examination having formed their opinions solely from newspaper reports, and testifying that they could try the case fairly and impartially notwithstanding the impressions so received were competent. *State v. Reed*, 89 Mo. 168; *State v. Wilson*, 85 Mo. 134; *State v. Hopkirk*, 84 Mo. 278; *State v. Stein*, 79 Mo. 330; *State v. Burgess*, 78 Mo. 234; *State v. Walton*, 74 Mo. 270. (2) The instruction as to what constituted rape was correct. R. S. 1879, sec. 1253; *State v. Montgomery*, 63 Mo. 296; 2 Bish. Crim. Law, secs. 1113-1116.

BLACK, J.—The defendant was convicted of rape, committed upon the person of Mrs. Gutting. Objections were made to several jurors for cause; and, as the ruling of the trial court upon the qualification of Mr. Worsey presents the strongest case in favor of defendant's objections, the examination of the other jurors need not be set out.

This juror upon his examination by the state, testified: "I do not know the defendant, nor do I know Mr. or Mrs. Gutting. I remember of reading of the case in the newspaper shortly after the affair occurred. I thought it was a pretty hard case. I can't say, but I have an opinion about the case. It would not prejudice me in the trial."

By counsel for defendant: *Q.* "You did form some opinion at the time of the occurrence, did you, when you read it in the newspaper?"

*A.* "Well, I thought it was a kind of a hard case, of course."

*Q.* "And you formed an opinion that it was a hard case?"

*A.* "At that time, yes, sir."

*Q.* "Well, you have nothing to change the opinion, have you?"

*A.* "Never thought of it since."

*Q.* "You have got that opinion yet?"

*A.* "Well, I have got that opinion yet, as I read it in the paper; if evidence is proved to the contrary, I can give a just verdict."

*Q.* "In other words, if you went on the jury you would have to have evidence to change that opinion you have formed?"

*A.* "Yes, sir."

*Q.* "If you were to take your seat now, you would have a bias or prejudice in your mind?"

*A.* "Yes, sir."

*Q.* "A bias and prejudice that would require evidence to remove?"

*A.* "Yes, sir."

*Q.* "In other words the defendant would have to prove that he was innocent?"

*A.* "Yes, sir."

He states on re-examination by the state, what he means is, that if the newspaper report is shown to be true, then he would retain the opinion he had formed; but, if the evidence showed another state of facts, he would arrive at a different conclusion.

By the court: *Q.* "Have you any prejudice in the case that would prevent you from giving him a fair trial?"

*A.* "Nothing to prevent me from giving him a fair trial."

*Q.* "Then would, or would you not, pay any attention to what you read in the paper?"

*A.* "No, sir. If I am employed as a juror it would take my attention from the paper. If I am sitting as a juror, I judge by what is put forth."

*Q.* "In the court-room?"

*A.* "Yes, sir."

In answer to other questions he says he could and would be guided by the evidence advanced on the trial.

The examination of this juror is lengthy, but the foregoing presents the essential parts of it.

The statute provides that a juror may be sworn, though. he has formed an opinion, if it be founded on rumor and newspaper reports and be such as not to prejudice or bias his mind. The rule repeatedly asserted under the statute is in substance this: A juror who states on his examination that he has formed and expressed an opinion as to the guilt or innocence of the accused, and that opinion has been formed from rumor or newspaper reports, and that it would require evidence to remove the opinion, is not an incompetent juror; provided it shall appear to the satisfaction of the court that such opinion will readily yield to the evidence in the case, and that the juror will determine the issues upon the evidence adduced in. court free from bias. *State v. Walton*, 74 Mo. 271, and cases cited; *State v. Bryant*, 93 Mo. 302. This rule, so often asserted by this court, is in accord with that where it is said : The true doctrine is that, if a juror's conceptions are not fixed and settled nor warped by prejudice, but only such as would naturally spring from public rumor, or newspaper reports; and his mind is open to the impressions it may receive according to the law and testimony, he is not incompetent. 2 Graham & Wat. on New Trials, 378.

Now, the opinion of the juror in this case was based upon what he had read in the paper over a year before the trial, since which time he had not thought of the matter. There is but one question left, and that is, whether it appears the opinion thus formed is such as not to bias his mind in the trial of the case. Does it appear that the opinion is one which will readily yield to the evidence ? This question, it may be observed, in the first place, is to be tried by the trial court as a question of fact, and the finding of the trial court ought not to be disturbed unless it is clearly against the evidence. All doubts should be resolved in favor of the finding of

the trial court. *McCarty* v. *Railroad*, 92 Mo. 536.
Moreover, the question as to the qualification of the
juror must be determined, not from a few catch-words
drawn from him by a series of questions, but from his
whole examination, including his demeanor whilst on
the witness stand. When he says he would have a
prejudice and bias which it would take evidence to
remove, and the defendant would have to prove his
innocence, he is evidently speaking of the case on the
supposition that the circumstances as stated in the
newspaper report should turn out to be true. His atten-
tion is called to the newspaper account, his opinion
thereon, and then the direct and leading questions are
asked which bring out the statements. When he is
given an opportunity to make a full explanation, it
appears he has no bias at all. He understood it to be
his duty to disregard the newspaper reports, and this he
says he could and would do. His notions of the case
were nothing more than such as any one would form
from reading a newspaper report, and it is but common
information that such reports have little or no influence
upon a fairminded man when he is called upon to deter-
mine the fact in the light of evidence given under oath.
If such a juror is to be rejected it must be because he is
an intelligent, honest, fairminded man, and not because
he has any opinion which would in the least sway his
mind from an impartial consideration of the evidence.

2. 'Mrs. Gutting resided on an out-street in the
city of St. Louis with her husband and two children.
She had been subject to aberrations of the mind for
four or five years, and for two years prior to the occa-
sion in question she had, according to the testimony of
her husband, spells two or three times a week, when
she imagined the persons who came to the house came
there to steal or carry off their property. In other
respects she appeared to be well, and at all times
attended to her household duties, taking care of the

children. On December 7, 1886, she prepared break-
fast for her husband as usual, and he left for his work.
Cunningham, the defendant, was a street vendor of
produce, and in that capacity had been at the house on
several occasions. About six o'clock in the evening of
the day last mentioned, he and Maher went to the
house with a two-horse wagon, having high sideboards,
but no cover. According to the evidence of Maher,
who was jointly indicted with defendant, he went to
the house to sell some butter, but did not go in.
Defendant then left the wagon and went into the house
and closed the door after him, and in a few minutes
came out dragging Mrs. Gutting by the arms. She had
no covering on her head, and only a pair of stockings
on her feet. In the struggle they fell down ⬛ e yard
fence, when defendant raised her up, took her to the
wagon, placed her feet on the hub, and then threw her
over into the wagon. The defendant got in and threw a
tarpaulin over her and himself and told Maher to drive
on, which he did. She appeared to be dazed and said :
" What have I done ? What is this for ? " Another
witness, who was fifty yards distant, says he saw the
wagon in the road at the house, and heard the woman
say, " I want; " that it was dark, and he heard and saw
nothing more.

Maher drove about a half-mile and stopped at a saloon
at what is called the Half-way House. He says he went
into the saloon leaving defendant and Mrs. Gutting under
the tarpaulin, and that defendant came into the saloon
in ten or fifteen minutes. They remained at the saloon
about two hours drinking with five or six other peddlers.
Other evidence is that these peddlers, at the invitation of
defendant, went to the wagon, one after another, and
returned with straw on their clothes. One witness says
the woman was lying down in the wagon motionless and
apparently in a state of unconsciousness. This shame-
ful conduct over, Maher and defendant drove west

about two miles, and the evidence of Maher is to the effect that on this drive defendant had intercourse with her. She said on this drive three or four times she wanted to go home. Maher drove back, but not to the house, and she found her way home. Defendant was then in a drunken stupor. Mrs. Gutting was alone when carried away by these men; she was then in the ninth month of pregnancy, and in twelve days gave birth to a child, since which time she has been wholly insane.

Her husband says she came home about half past twelve in a bewildered state of mind; she gave a broken account of what had happened, and did not know that any great wrong had been done. She was still without covering on her head and feet, though the weather was cold. ch arm there were from six to ten black marks, having the appearance of finger marks.

Defendant, testifying in his own behalf, says he drank beer with Mrs. Gutting on a former occasion when he stopped at the house; that on the evening in question she wanted beer and got into the wagon of her own accord to go to the Mount Pleasant House for that purpose, but they stopped at the Half-way House. He says she was a good woman, and he had no intercourse with her, with or without force, and that he made no improper proposals to her.

The objection made that it does not appear that force was used by the defendant, or that there was resistance on the part of the woman, cannot be sustained. The state must, of course, show force used on the part of the defendant, and that the woman did not consent. These questions of fact are interwoven, and the one is somewhat dependent upon the other. Whether the woman did or did not consent to the act is, in most cases, to be inferred from the surrounding circumstances; and, hence, resistance or want of resistance becomes an important element in the evidence. So, the resistance to be expected depends much upon the physical and mental strength of the woman. The distinctions

between the facts to be proved, and the evidence adduced in proof of them, should be kept in mind. "The importance of resistance is simply to show two elements in the crime : Carnal knowledge by force by one of the parties, and non-consent thereto· by the other." *State v. Shields*, 45 Conn. 264. According to *Commonwealth v. McDonald*, 110 Mass. 405, the act must have been done without the woman's consent, and there must have been sufficient force used by the accused to enable him to accomplish his purpose, and when these facts are made to appear, sufficient force has been shown. The case of *Croswell v. People*, 13 Mich. 427, holds, and only holds, that when a man had connection with a woman of mature years, of good size and strength, who was in a state of dementia, not idiotic, but approaching to it, and no fraud or force was used, it was not rape. The evidence in the present case tends to show that Mrs. Gutting, though not insane, was of a weak mind. She was dragged from her house and forced into the wagon and carried off. It tends to show that she did resist until thrown into the wagon. There is abundant evidence of force and that she did not consent to the outrage.

But conceding all this, it is next urged that the crime was not committed when the force was used, and that the subsequent conduct of the woman furnishes conclusive evidence of acquiescence on her part. It is doubtless true, as a proposition of law, that if consent is given after the assault and before the act is completed by penetration, it will not be rape. But a consent induced by fear of personal violence is no consent. 2 Bishop Crim. Law [7 Ed.] sec. 1125. Submission from fear, or because the mind of the woman is overcome by fright, is no consent. *McQuirk v. State*, 5 Am. St. Rep. 381. Though the witness Maher says Mrs. Gutting, during the drive to the saloon, made no outcry or resistance that he saw or heard, yet he says she and the

The State v. Cunningham.

defendant were covered up from his view, and that she, to use his language, appeared to be dazed when thrown into the wagon. Other evidence tends to show that while in the wagon at the saloon she was unconscious, and after leaving that place she wanted to go home. All this evidence tends to show that she was overpowered by the first brutal assault; and, if that be the fact, then her subsequent conduct falls far short of showing consent. On the contrary the evidence, as a whole, tends to show that she did not consent, and whether she did or not was a question for the jury to determine.

Nor do we agree to the proposition advanced by counsel for the defendant that there is no evidence of rape, except upon the theory that Mrs. Gutting was so insane as to be incapable of giving her consent. She was, beyond all doubt, a woman of a weak and a disordered mind, but she had the mental capacity to attend to her household duties at all times, cared for her small children, and visited acquaintances with her husband. The mere fact that a woman is weak-minded does not disable her from consenting to the act. *McQuirk v. State, supra.* A woman with less intellect than is required to make a contract may so consent to a carnal connection that it will not be rape in the man. 2 Bishop's Crim. Law [6 Ed.] sec. 1121. So long as the woman is capable of consenting, and does consent, the act is not rape, and this is true though the man may know that she is of weak intellect. All the evidence tends to show that Mrs. Gutting did have, when first assaulted, the strength of mind to consent or dissent; and there was no error in placing the case before the jury on that theory. Had this not been done it is quite clear the defendant would be demanding a reversal on that account.

At the close of the evidence the court inquired if there were any instructions that either side specially craved, and counsel on both sides made a negative reply. Thereupon the court, it is conceded, gave such instructions as are usually given in cases of rape. But it is now

urged that the court erred because it did not, of its own motion, submit the question of the sanity of Mrs. Gutting to the jury, and in not instructing the jury that if she was insane, the defendant could not be convicted, unless it also appeared that he knew she was incapable of giv-ing her consent.

Our statute provides that "every person who shall be convicted of rape * * * by forcibly ravishing any woman of the age of twelve years or upwards shall be punished," etc. R. S. 1879, sec. 1253. Rape is gen-erally defined to be the carnal knowledge of a woman by force and against her will. This and like definitions are compiled from the English statutes, and some text writers hold. that it is erroneous in that the words "without her consent" shall be used instead of "against her will." 2 Bishop's Crim. Law [7 Ed.] secs. 1114, 1115. Wharton says : " The term 'against her will' was used in the old statutes convertibly with 'without her consent;' and it may now be received as settled law that rape is proved when carnal intercourse is effected with a woman without her consent, although no positive resistance of the will can be shown." 1 Whart. Crim. Law [9 Ed.] sec. 556. Carnal knowledge of a woman by force and without her consent is rape. *Common-wealth v. Burke,* 105 Mass. 377; *Reg. v. Fletcher,* 8 Cox C. C. 131; *Reg. v. Ryan,* 2 Cox C. C. 115; *Reg. v. Jones,* 4 L. T. N. S. 154. From this, says Wharton, it follows that carnal knowledge with a woman incapable from mental disorder (whether that disease be idiocy or mania) of giving consent is rape. 1 Whart. Crim. Law [9 Ed.] sec. 560.

To constitute rape the act must be intended to be done with force and without the woman's consent, and if done with these intentional elements, it can make no difference that the woman was insane and that the accused did not know she was incapable of giving her consent. Unless this is so, an insane woman or an idiot

The State v. Cunningham.

is at a great disadvantage in the hands of a ravisher. But if the man does not know that the woman is *non compos*, and from her conduct is led to believe he has her consent, we do not see how the act can be rape.

But in this case there is no evidence tending to show that the accused had intercourse with Mrs. Gutting upon the mistaken belief that he had her consent. His evidence is a denial that he had intercourse with her at all, or made any proposal to her to that end. The state's evidence, if worthy of belief, shows that this woman was forcibly and intentionally ravished. No such a defense as that now suggested was thought of on trial, or the defendant's able counsel would have suggested it to the court. There is no evidence upon which to base it. Indeed, under the authorities before cited it might well be said that there is no evidence tending to show that the woman was incapable of giving her consent when first assaulted.

The judgment is therefore affirmed. RAY, C. J., absent. SHERWOOD, J., dissents; the other judges concur.

# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## APRIL TERM, 1890.