## QUESTIONS ON TRIAL FOR HOMICIDE.

[Circuit Court of Wyandot County.]

MARSH LINDSAY v. STATE OF OHIO.

Decided, April Term, 1902.

*Criminal Law—Irregularities in the Impanneling of Grand and Petit Juries—Indictment for Murder in an Attempt to Rob—Premeditation not an Essential Element—Plea in Abatement—Waiver of Constitutional Privileges—Change of Venue—Examination of Jurors on their Voir Dire—Charge of Court—Degree of Crime Fixed by the Jury.*

1. An irregularity in the impanneling of a grand jury, such as the swearing of and instruction of the jury before the return of the *venire facias*, is not ground for quashing an indictment, or for a plea in abatement, but must be taken advantage of, if at all, by challenge for cause.

2. Premeditation is not an essential element of an indictment for murder in the first degree, when the homicide was committed in an attempt to rob; and it is not necessary, where the indictment charges that the act was done by several persons jointly, that it should set out which one of the defendants actually did the killing.

3. An inquest before a grand jury is not a trial, and a plea in abatement in which it is alleged that the defendant was compelled to attend before the grand jury and to be sworn and give testimony without the advice of counsel, and to dress himself in disguise as the persons were dressed who committed the crime, and when thus dressed to exhibit himself before the grand jury, is bad for uncertainty and insufficiency because it does not allege that he claimed his constitutional privilege of refusing to answer or to dress himself in disguise.

4. The action of the trial court on motion for a change of venue can not be reviewed on error unless it should clearly appear that there was an abuse of discretion in overruling the motion.

5. The panel of a petit jury in a capital case when containing less than thirty-six names, may be filled by special venire.

6. Where in the examination of a petit juror on his *voir dire*, the juror states that he has formed an opinion or prejudice which is against the defendant, but he thinks he can render a fair and impartial verdict according to the law and the evidence, the acceptance of such juror by the court is a finding that the court

---

* Affirmed by the Supreme Court, 69 Ohio State, 215

was of the opinion that the juror would render a fair and impartial verdict, and the refusal of the defendant's challenge for cause was not error.

7. The charge of the court in a homicide case should leave the jury free to render such verdict and to fix such a degree of crime as their judgment and conscience dictate.

DOUGLASS, J.; VOORHEES, J., and DONAHUE, J., of the fifth circuit sitting in the third circuit; opinion by VOORHEES, J.

Plaintiff in error was indicted, together with four others, at the April Term of the Court of Common Pleas of Wyandot County, Ohio, on July 27, 1901, for the murder of William C. Johnson, on September 11, 1900. At said term plaintiff in error was tried and convicted of murder in the second degree, and sentenced to the penitentiary for life.

Error is prosecuted to this court, and numerous grounds are assigned for the reversal of the judgment. Among the errors assigned are:

1.  Irregularity in selecting a special grand jury.

2.  That the indictment is defective in form, viz.: That it does not define and describe a crime; it does not aver deliberate and premeditated malice; that it does not state which of the defendants held in his hands and discharged the pistol, or committed the supposed crime; the indictment was not returned and presented to the court as required by law; the grand jury, if sworn and charged at all, were sworn and charged before the return of the *venire facias;* that the grand jury was not sworn and charged until after they had entered upon said investigation and found said bill.

3.  That said jury only investigated this case charged in the indictment against this defendant and his co-defendants, and that while said grand jury was investigating said case, and while so doing, caused a subpoena to be issued for this defendant, plaintiff in error, and required him to be sworn in open court, and to give testimony before said grand jury concerning this case, and while the conduct of this defendant was being investigated, and required him to give testimony concerning the charge against him in violation of his constitutional rights.

4.  In sustaining the demurrer of the state to defendant's plea in abatement.

5.  In overruling defendant's motion for a change of venue.

6.  Errors in selecting and impanneling the petit jury, and in overruling objections of defendant to jurors for cause, and in compelling defendant to accept a juror challenged for cause after having exhausted the peremptory challenges under the statute.

7.  Error in the charge of the court as given, and in refusing to charge as requested.

8.  Misconduct of prosecuting attorney in the conduct of the case and in his closing argument to jury.

9.  That the verdict of the jury is not supported by sufficient evidence and is against the weight of the evidence.

We will consider the errors in the order named:

1.  As to the impanneling of the grand jury.

The errors complained of as to impanneling the grand jury are irregularities only, and not objections to any of the panel as to their qualifications.  Sections 5162 and 5167, Revised Statutes, provide for the selection, drawing and summoning of grand and petit juries.  Mere irregularities in selecting and drawing grand juries, which do not relate to or affect their qualifications as such, must be taken advantage of, if at all, by challenge for cause, and can not be made grounds to quash the indictment or be pleaded in abatement.  *Huling* v. *State,* 17 Ohio St., 583; *Blair* v. *State,* 5 C. C., 496; affirmed by Supreme Court, 25 Bull., 388.

Technical defects in obtaining and impanneling a grand jury, which do not affect the competency of the persons to act, can not properly be made the basis of a motion to quash the indictment or plea in abatement, but must, by express statutory provision, be availed of, if at all, by challenge before the jury is impanneled and sworn.  *Blaney* v. *State,* 17 C. C., 486.

Section 5171, Revised Statutes, provides for the filing of the panel of a grand jury, and is not affected by Section 5167, Revised Statutes (*Julian* v. *State,* 46 Ohio St., 511).  Said Section 5171, Revised Statutes, is not repealed by the act of 1894 and 1895.  *Stahl* v. *State,* 11 C. C., 23-33.

A special grand jury, assembled to consider one case, is not thereby prevented from investigating any matter which involves a violation of the criminal law of the state. *Franklin Co. (Comrs.)*, *In re*, 7 N. P., 450.

Section 5171, Revised Statutes, provides that:

"If, by reason of challenge, or for other cause, there be not present a sufficient number of jurors, summoned as aforesaid, to make up the panel, whether of the grand or petit jury, or if the array be challenged and set aside, the sheriff shall summon a sufficient number of talesmen to make up the deficiency; or, if there be such deficiency in the grand jury, the court may issue a special venire to the sheriff, commanding him to summon the persons therein named to attend forthwith as grand jurors; and at the close of each term of the court all persons who have served on either jury for such term, together with those who are found permanently disabled, disqualified or not liable to serve, shall be discharged."

Section 7 of the jury act of 1894 (91 O. L., 146), repealing certain named sections of the revised statutes, relating to the drawing of grand juries, did not, by implication, repeal other sections not therein named, relating to the summoning of talesmen for the grand jury. *Stahl* v. *State, supra.*

"Section 5167, Revised Statutes, as amended February 23, 1889 (86 O. L., 51), relating to the drawing of grand and petit juries,  *  *  *  gives a rule for the filling of the panel for a petit jury, but does not relate to the filling of the panel for a grand jury. The latter is governed, as theretofore, by Section 5171, Revised Statutes." *Julian* v. *State, supra.*

This section (5171) is not repealed by the act of 1894--1895. *Stahl* v. *State, supra.*

At the January Term, 1901, of said court, the record shows that fifteen persons were summoned by the sheriff from among the bystanders to appear on March 1, 1901, as grand jurors; and the court appointed Amos Bixby foreman, and he and his fellows took the oath as grand jurors as required by law, and on March 5, 1901, said grand jurors presented their certain bill of indictment endorsed by Amos Bixby, foreman of the grand jury, "a true bill," and against the following named persons:

Charles Foster, Willis Miller, Marsh Lindsey, Lock Foster, George Ury, murder in the first degree, in attempting to rob William C. Johnson.

It is contended by plaintiff in error that the grand jury was sworn and charged before the return of the *venire facias*. The record shows that the jurors were called and took the oath required by law, and were instructed by the court in relation to their duties. Even if this were done before the return of the venire, it would be an irregularity only, and would not be any reason or ground for quashing the indictment. *Blair* v. *State*, and *Julian* v. *State, supra*. Therefore, the motion to quash was properly overruled, so far as irregularities in selecting the grand jury are concerned.

2. Is the indictment defective in form?

The indictment in this case is predicated upon Section 6808, Revised Statutes, and charges the defendant, with four others named, with killing one William C. Johnson in attempting to perpetrate a robbery. The persons named in the indictment are all charged as principals. The indictment does not charge that the act of killing was with deliberation and premeditation, or with premeditated malice. But the charge is, that the act was done, with the intent unlawfully and purposely to kill and murder, whilst engaged in an attempt to perpetrate a robbery in and upon said William C. Johnson.

In an indictment for murder in the first degree, when the act was done in an attempt to rob, premeditation is not an essential element. Section 6808, Revised Statutes, provides that "Whoever purposely, and either of deliberate or premeditated malice, or by means of poison, or in perpetrating, or attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree."

In the case at bar, the intentional killing of Johnson by the defendant and others, while attempting to perpetrate a robbery, is a charge under the statute of the crime of murder in the first degree. Premeditation in such a case is not essential *Stephens* v. *State*, 42 Ohio St., 150; *Robbins* v. *State*, 8 Ohio St., 131; *Jones* v. *State*, 14 C. C., 35.

It is alleged in the motion to quash, and also in the plea in abatement, that the act and crime complained of were committed by all five defendants, and that there is no allegation that the defendant committed it.    They were all indicted together, and charged with the same offense.    It is not necessary for the indictment in such case to set out which one of the defendants fired the fatal shot.    It was proper and sufficient to allege that all five committed the unlawful act.    If the proof on trial showed that the five were together, and that only one of them did the act, and the others were present aiding and abetting him, they should be charged as principals.    We think the indictment is sufficient in form, and charges a crime of murder in the first degree, and it is not indefinite by reason of failing to allege which one of the five charged held the pistol or fired the fatal shot.

Third and fourth grounds of error are considered together. It is alleged in the motion to quash, and also in the plea in abatement, that the grand jury, investigating the case of the defendant (plaintiff in error), caused a subpœna to be issued for the defendant, requiring him to be sworn in open court, and required him to, and he did, give testimony concerning said case, and the conduct of the defendant in relation to said crime was being investigated, and the state required defendant to give testimony concerning the charge against him.    When he so gave his testimony he did not know that any case against him was being investigated, and that he was not permitted to have counsel to obtain advice upon said matters, and was required to and did take an oath, as a witness, against his will, and was required to appear before said grand jury and to give testimony concerning said case; that he was, by the prosecuting attorney and sheriff, required, against his will, to dress himself as the person or persons who committed the crime for which he stands charged, were dressed, or appeared to be dressed, at the time the crime was committed; and while so dressed against his will, he was required to walk, talk and exhibit himself in the presence of the prosecuting witness and other witnesss for the state, to enable them to testify before the grand jury as to whether or

not the defendant was the person who committed the crime with which he stands charged,. and that said witnesses, after having so seen this defendant disguised as aforesaid, appeared before the grand jury and gave testimony against him as to his identity.

It is contended that in this, the constitutional rights of the plaintiff in error were violated by his being so subpœnaed and appearing before the grand jury, and in being sworn and in testifying upon any matter connected with the crime for which he was indicted. The plaintiff in error does not aver in his plea in abatement that he claimed his constitutional privilege to refuse to answer any questions or interrogatories, but his allegation is that he was required and compelled to and did make answers to all the questions put to him. This is a conclusion from the facts which he was required to set forth in his plea, and not the conclusions themselves. He further contends that he was denied the assistance of counsel. The legal sufficiency of this plea in abatement is raised by demurrer by the state to the plea. The demurrer was sustained and the defendant excepted. This raises an important question as to whether or not a constitutional right of the defendant was violated in this regard. At the time he so testified he was not on trial. It is true Section 10, Article I, Ohio Constitution, provides: ''Nor shall any person be compelled in any criminal case to be a witness against himself, or be twice put in jeopardy for the same offense.''

The question in this case is, should an indictment be quashed on motion or by plea in abatement merely because the accused was one of several witnesses summoned and examined by the grand jury in investigating a crime for which he was afterwards with others indicted? If any person summoned to so appear and testify, fails to claim his privilege, but answers questions incriminating or implicating himself, the mere fact that he has so testified is not enough to invalidate an indictment against him, though based in part upon his testimony. Nor will the fact that a suspected person has been required to give evidence in another matter be sufficient to set aside an indictment on the ground that he is compelled to testify against him-

self, unless it affirmatively appears that he was indicted wholly or in part on his own admission. *Boone* v. *People*, 36 N. E. Rep., 99 (148 Ill., 440); *Mackin* v. *People*, 3 N. E. Rep., 222 (115 Ill., 312).

In *People* v. *Lauder*, 46 N. E. Rep., 956 (82 Mich., 109), it was held: That the constitutional rights of the respondent were not violated by his being subpœnaed and appearing before the grand jury, and being sworn, nor in testifying upon any matter then under investigation that did not criminate him, and, if he testified without objection, he was deemed to have done so voluntarily. It was further held in the same case that the respondent, not having averred in his plea that he claimed his privilege or refused to answer any interrogatories, but that he was required and compelled to, and did make answer to the questions put to him, was a conclusion from the facts, which he was required to set forth.

It will be observed upon an inspection of the defendant's plea in abatement, that he does not allege that he claimed his privilege or refused to answer the interrogatories, or that he refused to dress himself in disguise, but his allegations are, that he was required and compelled to do so. This is pleading a conclusion instead of the facts, which he should have set up in his plea. The court, in *People* v. *Lauder, supra,* page 957, on the sufficiency of a plea in abatement, uses this language:

"Second, because his (defendant's) constitutional privilege was invaded in compelling him to testify against himself. In determining the sufficiency of this plea, it should be borne in mind that the finding of the grand jury was not a trial upon the merits, but a presentment of charges or mere accusation upon which a trial may be had. The plea does not assail the form or the substance of the indictment, but sets up the misconduct of the grand jury in proceedings before them, anterior to the finding of the indictment. It is a dilatory plea, which, in the unbroken practice of the courts, is for that reason looked upon with disfavor, and has always been subjected to technical rules. When such dilatory pleas are resorted to, we must apply to them those long-established canons of construction to test their sufficiency for the purpose of abating the prosecution, which the experience of courts through a long series of years has found necessary to protect suitors from unnecessary delay and

expense. Those rules are necessarily strict and technical, and a party interposing such dilatory plea invites the most rigid scrutiny of its sufficiency under the established rules of pleading.''

The defendant, plaintiff in error, does not claim in his plea that he asserted his privilege, or refused to answer any interrogatory, or refused to be dressed in disguise. He avers that he was required and compelled to, and did make answer to the questions put to him; that he was compelled to dress, walk and talk and exhibit himself in the presence of the prosecuting witness and other witnesses for the state, to enable them to testify before the grand jury as to his identity with the person who committed the crime with which he stands charged. He avers that he was required and compelled to, and did do these things. This is a conclusion from the facts. The rules of pleading in abatement require him to set forth the facts, and not his conclusions. The same is true with the averment of the plea with reference to his being compelled to take his oath. The real complaint made by the plea is, that he was subpœnaed to appear before the grand jury, and he appeared in obedience thereto; that he was sworn in open court, was interrogated and answered questions; that he was dressed in disguise, etc. He states that all this was done without having the aid and advice of counsel, etc. As he was not upon trial for any offense, no exceptions can be taken to his not having the assistance of counsel; and as he made no objection to testifying, dressing up, walking or talking, on account of privilege, these acts and facts furnish no ground for quashing the indictment.

It has been held in the following cases, that a prisoner, when on trial, may be compelled to furnish personal evidence of his identity. *State* v. *Graham,* 74 N. C., 646 (21 Am. Rep., 493); *Walker* v. *State,* 7 Tex. Ct. App., 245 (32 Am. Rep., 595); *State* v. *Ah Chuey,* 14 Nev., 79 (33 Am. Rep., 530).

In the last cited case the defendant was held compellable to expose his arm to determine whether there were tatoo marks on it, as described by witnesses, and the holding was sustained by a majority of the court.

In *State* v. *Garrett,* 71 N. C., 85 (17 Am. Rep., 1), the prisoner was held properly compelled to exhibit her hand, which she pretended to have burned.

In *State* v. *Prudhome,* 25 La. Ann., 523, the court said:

"The tracks of the murderer were found near the scene of the murder, and to enable the witness who saw the tracks to state how they corresponded in size with the feet of the prisoner, he was forced to take his feet from under a chair where he had put them. This the prisoner's counsel called forcing him to give evidence against himself. Mere statement of the fact shows how utterly untenable the objection is. The witness was required to look at the feet of the prisoner in order to testify to facts which might enable the jury to connect the prisoner with the perpetrator of the crime, and we are unable to perceive how any constitutional right of the prisoner was infringed by compelling him to place his feet where they could be seen by the witness.

"The accused may, when arrested, be subjected to a compulsory physical examination to ascertain his identity. A witness may always testify to the physical condition of the prisoner, when his condition is relevant. He may state what marks he saw on the prisoner's body, whether he was physically deformed in any way, and may describe his general personal appearance so far as he observed it. And this is the rule even where the clothing of the prisoner is forcibly removed without his consent by the police officers who arrested him, or who have him in charge, and his nude body is examined for purposes of identification. Where the condition of the prisoner's hand, at the date of the crime, is relevant, it has been held that he may be required to exhibit it devoid of covering; and a witness who saw it then exhibited, at the coroner's inquest, may testify to its condition, though the exhibition was obtained by intimidation." *State* v. *Garrett,* 71 N. C., 85, 87 (17 Am. Rep., 1).

The cases just reviewed are cases where the accused party was upon trial in the trial court, and we take it that if the constitutional rights of a prisoner were not violated in these cases, much stronger reasons favor the holding that the prisoner's constitutional rights were not violated by his being subpoenæd and appearing before the grand jury and being sworn, and in testifying upon any matter that did not criminate him, and especially when he did not claim his privilege or refuse to

answer the interrogatories put to him. At the time he so testified that he was not on trial. An inquest before a grand jury is not a trial. The plea in abatement sets up the facts embraced in grounds one and two, and as we have considered them, it is not necessary to consume time to show that there was no error in sustaining the demurrer to his plea.

5. Motion for change of venue.

This motion is attempted to be supported by affidavits that a fair trial for defendant could not be had in this county on account of prejudice. Counter affidavits were submitted by the state. On examination of the evidence submitted, we are of the opinion the court did not err in overruling the motion. Such motions are addressed to the sound discretion of the court, and unless there has been an abuse of discretion, there was no error in overruling the motion. *Hotelling* v. *State*, 3 C. C., 630.

6. Error is assigned in selecting and impanneling the petit jury that tried the defendant, in this: But thirty-five of the jurors reported under first venire. The panel was filled by special venire. It is contended that this was irregular and illegal.

Section 7267, Revised Statutes, provides for the jury in capital cases. Section 7268, Revised Statutes, provides for additional jurors. Upon the trial of a capital offense, the first thirty-six persons summoned who answer to their names, and who are without the disqualifications named in Section 7268, Revised Statutes, constitute the panel from which the jury for the trial of the cause is to be chosen, but if so many of this number be set aside or challenged as would not leave twelve persons competent to serve, the vacancy so caused must be filled in the manner directed in Section 7275, Revised Statutes. The court may order additional names to be drawn (Section 7269, Revised Statutes). Jurors summoned as provided by Sections 7267, 7268 and 7269, Revised Statutes, or such of them as are not set aside on challenge, together with so many of the bystanders having the qualifications aforesaid as will make up the number of twelve, as may not be set aside on challenge, shall be a lawful jury, etc.; provided that either party may demand and have a special venire to fill the panel as provided in Sec-

tion 5173, Revised Statutes (Section 7275, Revised Statutes). Peremptory challenges by defendant in a capital case shall be sixteen (Section 7272, Revised Statutes).

It is urged that the trial judge erred in refusing to sustain the challenge for cause interposed by the defendant to each of the persons called as jurors, to-wit: Arthur Bigman, George Spoon, Lewis Cross, and who, after the overruling of the challenge for cause, were peremptorily challenged by the defendant. After the defendant had exhausted his peremptory challenge, he asked to challenge the juror, Parker, the last juror called, peremptorily, and the challenge was overruled.

It will be impracticable to review all the testimony bearing upon the qualifications of these three jurors.   In selecting Lewis Cross, perhaps the question can be tested as well as by either or all of the others.   Cross said in answer to questions propounded by counsel for defendant:

"Q.  From all you have talked and read about the other trials (presumably the other trials mentioned were those of the co-defendants of plaintiff in error), have you formed any opinion as to the guilt or innocence of the defendant.  A.  I think I did have an opinion.

"Q.  Is that opinion with you still?  A.  Yes, sir.

"Q.  Would it require any testimony to remove the opinion you have now formed?  A.  Yes, I think it would.

"Q.  And the opinion that you now have is against the defendant?  A.  Yes, it would be against him.  ·

"Q.  It would take more testimony to remove that opinion, would it not?  A.  It would take some testimony; yes.

"Q.  When you start into the investigation of this case, you would not start exactly fair and even between the state and the defendant, would you?  A.  I think I could start about even with this man in this case.

"Q.  You say it would take testimony to remove the opinion you now have?  A.  Well, of course, it would.

"Q.  Your opinion against the defendant is, that he was possibly one of the gang?  A.  Yes, sir.

"Q.  And it would take more testimony to remove that conclusion of yours?  A.  Yes, sir."

Thereupon he was challenged for cause.   On examination of the prosecuting attorney he was asked:

"Q. Have you any opinion now, whether the defendant, Marsh Lindsay, is guilty of the offense? A. Yes, sir.

"Q. Well, if you have any explanation you may offer it? A. My opinion is that he was guilty if he was in the gang with the other fellows, if he don't prove himself.

"Q. But you don't know now if he was in the gang or not? A. I have no opinion that he is guilty.

"Q. Have you an opinion now that he was in the gang? A. Not any more than as they have indicted him.

"Q. If the judge here told you that you need not consider the fact that he was indicted, could you lay aside that fact and not consider that as evidence against him? A. I think I could.

"Q. Could you, notwithstanding any bias, opinion or prejudice that you may have, render a fair and impartial verdict according to the law and evidence? A. Yes, sir."

Thereupon challenge for cause overruled, and the juror was challenged peremptorily by the defendant.

The opinion which should exclude a juror must be one of a fixed and determined character, deliberately formed and still entertained, and one that in an undue measure shuts out a different belief, as when the opinion of the juror has been formed upon the evidence given in a former trial, or when the opinion of the prisoner's guilt has become a fixed belief, and under such conditions it would be wrong to receive the juror. On the other hand, when his opinion or impressions are founded upon rumor or reports in newspapers, which the juror feels conscious he can dismiss, and is able to say he can fairly try the prisoner on the evidence, he ought not to be excluded.

Taking all that the juror, Cross, says in his examination, it shows that his opinion falls within the latter class. He said from what he had talked and read about the other trials, that he had an opinion in his mind as to the guilt or innocence of the defendant; and that opinion would follow him into the jury box. If he had no evidence against it, it would influence him if he had no other evidence. The remainder of the examination in chief is but a repetition of the same thought. In his cross-examination, after he is told as to the effect of the fact that the defendant was indicted, and the report that the defendant belonged to the gang, that his opinion so formed would not influence him, unless the evidence sustained it; and,

finally, in reply to a question by the prosecuting attorney whether he could, notwithstanding any bias, opinion or prejudice that he then had, render a fair and impartial verdict according to the law and the evidence, he answers he could.

This case presents a test of the principle whether the reading of ·newspaper reports, rumors and the fact that a party is indicted and an opinion formed from these sources shall disqualify a juror. To so hold we think would require us to recede from the practice that has been established in this state testing the qualification of jurors.

In *Goins* v. *State,* 46 Ohio St., 457, the juror had conversed with the father of the deceased on the day of the tragedy, and with others who claimed to have been eye-witnesses, and described all about it, and the court, having put the question whether, notwithstanding his opinion, he could render a fair and impartial verdict according to the law and the evidence, and the juror answering that he could, the juror was not disqualified, or the reception of the juror was not an abuse of the discretion lodged in the trial court to warrant a reversal of the judgment on that ground alone. It is not clear in the case at bar that the prejudice or opinion of the juror resulted from talking with any witness who professed to be acquainted with the facts, or that had any knowledge excepting such as was gained from newspaper reports, or in talking with persons who professed to know the facts.

Under these circumstances we do not think the trial court abused its discretion in coming to the conclusion, from the whole examination, that the juror would, if selected, render a fair and impartial verdict. Such conclusion may be drawn from the fact that the court so accepted him. This court, in coming to this conclusion, believes that it is following the trend of decisions in Ohio, as found in *McCarthy* v. *State,* 5 C. C., 627; *Blair* v. *State,* 5 C. C., 496; *McHugh* v. *State,* 42 Ohio St., 154, 160; *Doll* v. *State,* 45 Ohio St., 445, 446; *Goins* v. *State,* 46 Ohio St., 457; *Jones* v. *State,* 14 C. C., 35; *Limerick* v. *State,* 14 C. C., 207. To same effect are the following authorities out of the state: *State* v. *Cunningham,* 12 S. W. Rep., 376 (100 Mo., 382); *State* v. *Sawtelle,* 66 N. H., 488 (10 Am. Cr. Rep., 347).

7. Did the court err in its charge to the jury?

Before argument the defendant requested the court to charge certain propositions of law, which the court gave as requested.

Among the propositions as requested and given is the following:

"The law and the evidence should be their, the jury's, only guide in determining the guilt or innocence of the defendant. Has the state established by clear, convincing and satisfactory evidence beyond a reasonable doubt, that the defendant is guilty as charged in the indictment, or of some other degree of murder or manslaughter, or it may be assault and battery, or assault merely; otherwise your verdict should be not guilty."

II. Defines a reasonable doubt.

III. The nature, effect and purpose of the defense of an alibi, and how proven.

IV. The effect of and indictment being found against the defendant; that it is not of itself any evidence of the defendant's guilt.

V. As to the claim and evidence offered by the state tending to prove that five different persons participated in the commission of the crime mentioned in the indictment.

The instructions so given before argument on these several propositions of law are correct, and the general charge on the same propositions are in harmony with them.

The principal contention, however, arises on the general charge, wherein the court instructed the jury, that while the indictment charges the crime of murder in the first degree, the statute requires the jury, in case they find the defendant guilty under such indictment, to determine the degree of the offense of which they so find him guilty. It is contended by plaintiff in error there was error in so instructing the jury.

The indictment charges the accused with purposely killing the deceased, while perpetrating or attempting to perpetrate a robbery; and if the evidence tended to show no other grade of offense, it was error to charge the jury that if they found him guilty under the indictment, to determine the degree of offense of which they so found him guilty, and in further saying to the jury that there were included within the terms of the indictment lesser offenses than murder in the first degree. The contention is, that it was error, under these conditions, for the

jury to render a verdict fixing a degree less than murder in the first degree; that the charge is murder in the first degree, and if not so found, the verdict should have been an acquittal.

In every charge of murder in this state the rule is, that when the fact of killing is established, the law presumes the killing to be no higher than murder in the second degree, if there be no explanatory circumstances in the evidence introduced by the state, and none are proven by the prisoner. To establish the higher degree, namely, murder in the first degree, the state must establish premeditated malice, or that the killing was committed by administering poison, or in perpetrating or attempting to perpetrate a robbery, etc. *Prima facie* every unlawful killing is murder, for malice is presumed unless the prisoner shows extenuating circumstances, which take away the presumption of malice. This is a common law presumption, but where the Legislature classified murder into degrees, the bur den is upon the state to show that the homicide is murder in the first degree, the common law presumption rising no higher than the second degree.

Section 7316, Revised Statutes, provides:

"When the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any inferior degree; and if the offense charged is murder, and the accused be convicted by confession in open court, the court shall examine the witnesses and determine the degree of the crime, and pronounce sentence accordingly."

In the instructions requested by defendant and given by the court before the argument, the rule of law is recognized, the jury is to determine whether the state has established by clear, convincing and satisfactory evidence, beyond a reasonable doubt, that the defendant is guilty as charged in the indictment, or of some other degree of murder or of manslaughter; otherwise their verdict should be not guilty.

To have directed the jury that they must find the prisoner guilty of murder in the first degree or acquit, would have been an invasion of the jury's right to determine, or ascertain from the evidence before them of which of the degrees of the crime

the defendant was guilty, as he stood charged in the indictment. *Beaudien* v. *State*, 8 Ohio St., 634; *Robbins* v. *State*, 8 Ohio St., 131.

There would be no question as to the correctness of the court's instruction in this regard were it not for the apparent conflict with the case of *Dresback* v. *State*, 38 Ohio St., 365. In that case the court held:

"That on the trial of an indictment for murder in the first degree, charging the accused with purposely killing another by administering poison, the evidence tending to show no other grade of offense, it is error to charge the jury to the effect that if they find the accused guilty, their duty will be fulfilled by convicting of murder in the first or second degree, or manslaughter."

The jury must be left free to determine the degree of the crime, where the indictment charges an offense including different degrees. This principle was violated in the case of *Dresback* v. *State, supra,* when the court told the jury their duty will be fulfilled by convicting of murder in the first or second degree, or manslaughter. Their duty is only discharged when, from the evidence they determine, first, if the accused is guilty as he stands charged in the indictment, and further, from the same source, determine or ascertain the degree of the crime, where the offense includes different degres, as in that of murder.

The principle of the law is, that the jury must not be imperatively required to render a verdict for a particular degree of homicide; nor must the instruction be such as to deny to them the power of rendering such verdict as their judgment and conscience dictate, after being fully instructed as to their duty. *Adams* v. *State*, 29 Ohio St., 412, 415.

8. Misconduct of prosecuting attorney in his closing argument to the jury.

It appears from the fragmentary extracts of the argument, as shown by the record, that the prosecutor made allusion to conditions, but the record is very indefinite as to just what was intended to be conveyed by the remarks made; for example:

"Why don't they put Walker on the stand? The moment he put Walker on the stand and he swore he slept with George

Ury, he would bring Miller to show it was he who slept with Ury."

"Shuck and his whole family say he was near the Johnson house on the sixteenth day of last September."

Without reproducing more of the record, we are of the. opinion that these comments are not of that character that would warrant a, reversal of the judgment.

9. That the verdict of the jury is not supported by sufficient evidence.

The defendant was found guilty of murder in the second degree as he stood charged in the indictment, and not guilty of murder in the first degree as therein charged; and it is contended by plaintiff in error that the verdict is not supported by sufficient evidence. The record is a very voluminous one, and we have taken the time, and with care and labor gone through and carefully examined the whole record. There is much positive and direct evidence on the part of the state as to the identity of the plaintiff in error as being one of the five men who were present at the time and place, and who took part in committing the homicide. On the other hand, the defendant produced many witnesses who testified with a great deal of positiveness as to his presence elsewhere at the time the homicide was committed. This evidence tended to establish, and, it is claimed, did establish what is known in the law as an alibi. The evidence is conflicting on this question as to the albi. If the evidence on the part of the state is true as to the identity of the plaintiff, and as to his presence at the time and place when and where the homicide was committed, then he is guilty beyond a reasonable doubt. If the testimony of the defendant is to be believed as to his presence elsewhere at that time, then he could not be guilty.

The jury found the issue thus made against the defendant, and we can not consistently with the rules of law say, from a careful examination of all the evidence, that they were manifestly wrong in so finding.

The court has reached a unanimous conclusion upon all the questions involved, including the one now under consideration; and, without attempting to review the record in detail, we are of the opinion the verdict is supported by the evidence.

The case has been ably and well tried by able counsel on both sides, and with clear and proper instructions from the court resulted in a verdict of guilty against the plaintiff in error of murder in the second degree.

This court can not disturb the verdict under the well recognized rules of law governing reviewing courts in reviewing and passing upon the sufficiency of evidence to support verdicts of juries in criminal cases.

Finding no error in the record, the judgment of the common pleas court is affirmed with costs, and execution is awarded and the cause remanded for execution.

*E. T. Dunn, John M. Winn* and *W. R. Hare*, for plaintiff in error.

*Benjamin Meck*, for defendant in error.