**STATE of Missouri, Respondent,**

v.

**Robert WILSON, Appellant.**

**No. 52345.**

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Peter J. Grewach, Asst. Atty. Gen., Troy, for respondent.

Strop, Watkins, Roberts & Hale, St. Joseph, for appellant.

WILLIAM H. BILLINGS, Special Judge.

Defendant was prosecuted under the Second Offender's Act for burglary and stealing and upon the jury's finding of guilty on both charges, the trial court sentenced defendant to terms of six years for burglary and two years for stealing, the sentences to be served consecutively. On this appeal the defendant contends the court erred in submitting to the jury the charge of burglary and in overruling his challenge for cause of a venireman. For the reasons hereinafter set forth it is our judgment that the evidence was sufficient to support the burglary submission and that the trial court did not abuse its discretion in denying the challenge for cause.

On Labor Day, September 6, 1965, between 8:00 o'clock and 8:30 o'clock A. M., defendant and three other men, Victor Harris, Harvey Campbell and Monte Brown, came by Hartwell Fisher's residence in Kansas City. Defendant was driving a black 1956 Mercury automobile. Harris explained to Fisher that his automobile had broken down on the highway north of Kansas City and wanted Fisher to take his car and pull the Harris vehicle into Kansas City. Fisher agreed and Harris accompanied him in Fisher's 1963 Chrysler automobile. Defendant and the other three men followed in the Mercury. When the two vehicles arrived at Camden Point where Harris' disabled car was located, Fisher was told that the others had "gotten into" a Montgomery Ward store at St. Joseph and they wanted him to take some of the merchandise back to Kansas City in his car. Fisher agreed to accompany the defendant and the other three men and use his car in return for some of the merchandise and some money. The Harris vehicle was left at Camden Point.

The two cars were parked near the Montgomery Ward store in East Hills Shopping Center at St. Joseph and the five men entered the store through one of the front doors. Two of the front doors were locked, but the third door, through which the men entered, was not locked. Merchandise was collected by the five men and carried to the rear of the building near the loading dock. Defendant and Campbell left the

store and returned to the automobiles. An overhead garage door to the automobile service center of Montgomery Ward was raised and Campbell drove the Chrysler into this area, followed by defendant in the Mercury. The door was lowered and the group proceeded to load the merchandise into the two vehicles from the loading dock. Defendant then raised the garage door and as the Chrysler moved towards the opening a police car passed and defendant lowered the door.

Lieutenant Farmer and Officer Wells of the St. Joseph police were on a routine patrol of the shopping center about 11:30 o'clock A. M., on September 6, 1965. As the police car neared the Montgomery Ward store the officers could see through the windows of the overhead garage doors of the automobile service area and they saw several individuals moving around and vehicles inside the building. One of the overhead doors partially raised and then lowered. The officers saw several individuals running around inside the service area and then run from the building. Harris, Brown and Campbell were apprehended by the officers nearby but defendant and Fisher were not arrested until later in the day. Lieutenant Farmer chased the defendant and was able to identify him in a line-up Monday night as the same individual he had unsuccessfully pursued.

Inside the automobile service center of the Montgomery Ward building the officers found the 1963 Chrysler and the black 1956 Mercury. Merchandise belonging to Montgomery Ward valued at $31,500.00 was found inside the vehicles.

The outer doors of the Montgomery Ward building consisted of three aluminum front entrance doors, the overhead garage doors on either side of the automobile service center, and a service door near one of the overhead garage doors. All doors had been locked at the close of business Saturday night and management personnel had the keys. The center stile of the front entrance doors had been pried apart and the cylinder lock which locked one door had

been removed. Pry marks were found on the aluminum frame above and below where the lock had been located. The overhead garage doors had been secured by padlocks on the inside of the doors. A broken padlock was found on the floor inside the service area near the overhead door which had been opened. The service door had been pried open but a trailer parked on the outside prevented this door from being opened out.

■ Defendant contends the evidence was insufficient to submit the charge of burglary against him to the jury because there was no evidence that he forcibly entered the Montgomery Ward store, either alone or in conjunction with others. This contention ignores the rule that in determining this issue the facts are to be considered in the light most favorable to the state. State v. Stoner, Mo., 395 S.W.2d 192; State v. Walker, Mo., 365 S.W.2d 597.

The front entrance door through which the defendant and his accomplices entered the retail area of the store had been previously pried open in such a fashion that the cylinder lock had been removed. Pry marks were found on the aluminum frame in the immediate area where the lock had been located. The door had been locked by means of the cylinder lock at the close of Saturday's business, the management had the keys to the lock and no one had been authorized or permitted by the personnel of Montgomery Ward to enter the store between Saturday night and the time the burglary was discovered the following Monday. Additionally, the defendant was identified by Lieutenant Farmer as one of the men he had seen run from the building which bore the physical marks and damage evidencing a forced entry. Further, Fisher had been advised by defendant and his companions that they had "gotten into" the Montgomery Ward store and wanted him to help transport stolen merchandise from the store to Kansas City. Defendant seeks to isolate a portion of Fisher's testimony that the front entrance door was unlocked and open when defendant passed through

it. It is our judgment that when Fisher's entire testimony is examined it is clear that when the five men arrived at the entrance door and gained entry, the door was open in the sense that it was *unlocked* (by reason of the lock having been previously removed by defendant and his accomplices) but it was not open in the sense that it was standing ajar. Thus, on direct examination of Fisher:

"Q   Was the door opened or locked?

"A   Two doors were locked and one was open.

"Q   Do you know how that door came to be *unlocked*?

"A   No." (Emphasis added.)

And on cross-examination:

"Q   It is your testimony now, you and Harris entered the front door that was already open?

"A   Correct."

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

"Q   When you entered did you sneak around to see if someone was looking?

"A   No. I was following Harris and walked straight up *to the door*." (Emphasis added.)

■   In State v. Rhodes, Mo., 408 S.W. 2d 68, we said that unlocking and opening a locked door or pushing open a door which is shut but neither locked nor latched, or the opening of a closed door, or the opening of an unlocked door is sufficient to render an entry thus effected, burglary, if done with intent to commit burglary. It is our view that the evidence most favorable to the state, and reasonable inferences therefrom, demonstrate that the defendant's entry into the retail area of the Montgomery Ward store was effected by defendant's and his accomplices' forcible removal of the cylinder lock on one of the locked aluminum doors and subsequently pushing open this door. We further observe that the undisputed fact that defendant's entry into the service area while driving the Mercury automobile was accomplished by the breaking of the padlock which secured the overhead garage door and raising this door. We hold there was ample evidence to show forcible entry with intent to commit burglary.

We turn now to defendant's contention that the trial court erred in overruling his challenge for cause of venireman Wyant. The voir dire of the jury panel revealed that most of the panel had either read newspaper accounts or heard television news reports of the burglarizing of the Montgomery Ward store eight months before. During the examination of Mr. Wyant the following transpired:

PROSECUTING ATTORNEY:

"Q   Do you recall having read of this case?

"A   Yes.

"Q   Does anything in particular stick out in your mind?

"A   I remember particularly reading all about it.

"Q   On the basis of what you read, did you form an opinion as to the guilt or innocence of this defendant?

"A   No, not formed, but assumed maybe. He used the word[s] 'they caught them on the job' and I assumed they were guilty.

"Q   Did you make that assumption?

"A   I assume you would have to say that.

"Q   It is a matter of law that a defendant in a criminal case is innocent until he is proven guilty. The State has the burden of proof to prove beyond a reasonable doubt that the defendant is guilty. Do you still have the assumption the defendant might be guilty?

"A   No. Not if he is proved otherwise.

"Q  Do you presume at this time he is innocent?

"A  I would have to say that until he is proven guilty, I guess. I would have an open mind.

"Q  After hearing all the evidence and the Court's instructions given you at the close of the case, is there any reason why you could not return a fair and impartial verdict, both to the State and to the defendant?

"A  No.

"Q  Would you be able to set aside any previous opinions you have formed?

"A  Yes."

COURT:

Q  "Mr. Wyant, when you say you assume he is guilty, do you assume this defendant is one they caught out there?"

A  "No. I just assumed 'the fellows they caught in the place'."

Q  "Suppose it should turn out they didn't catch anyone in the place?"

A  "It don't know whether they did or not."

Q  "Suppose the information you get from the witness stand is different to what you read in the paper?"

A  "That would change me completely."

Q  "If the evidence from the witness stand is different from what you read in the paper?"

A  "Yes."

DEFENSE COUNSEL:

Q  "Would you begin the trial with that assumption. At this time do you still assume this defendant is guilty?"

A  "I don't know whether he is one of them. I just assumed they caught them out there. If I remember cor- rectly, they caught them right inside the store is why I said that."

Q  "If the testimony is that this defendant was caught in the store, would you begin the trial on the assumption he is guilty?"

*    *    *    *    *    *

Q  "So as not to mislead you, I don't think the evidence will be that this man, or anyone, was caught inside the store."

A  "All right."

◼  Section 546.160, RSMo 1959, V.A. M.S., provides that it shall be good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried, but if it appears that such opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn. Here, the venireman's *assumption* was based upon a news report that "defendant and others were caught by the officers inside the store." After the explanation by the prosecutor of the presumption of innocence and state's burden of proof, Mr. Wyant stated that he presumed the defendant innocent until he was proven guilty and would have an open mind. Further, he also stated he would be able to set aside any previous opinions and could hear the evidence and the court's instructions and give both the state and the defendant a fair and impartial trial.

◼  Of necessity, the trial court is vested with considerable discretion in ruling a challenge for cause. State v. Spica, Mo., 389 S.W.2d 35; State v. Crockett, Mo., 419 S.W.2d 22. And all doubts should be resolved in favor of the finding of the trial court. State v. Cunningham, 100 Mo. 382, 12 S.W. 376.

In Cunningham, supra, several jurors were challenged for cause and in rejecting defendant's complaint of error of the overruling of his challenges, the court set out what it deemed to be the strongest case in

defendant's favor. We will not lengthen the opinion in the case by setting out the juror's responses in Cunningham but suggest the similarity of the questions and answers in this case. We reaffirm Judge Black's reasoning in this court's opinion in Cunningham as being determinative of instant defendant's complaint of error. Judge Black wrote (1. c. 377): "The statute provides that a juror may be sworn, though he has formed an opinion, if it be founded on rumor and newspaper reports, and be such as not to prejudice or bias his mind. The rule repeatedly asserted under the statute is, in substance, this: A juror who states on his examination that he has formed and expressed an opinion as to the guilt or innocence of the accused, and that opinion has been formed from rumor or newspaper reports, and that it would require evidence to remove the opinion, is not an incompetent juror; provided it shall appear to the satisfaction of the court that such opinion will readily yield to the evidence in the case, and that the juror will determine the issues upon the evidence adduced in court, free from bias. State v. Walton, 74 Mo. 271, and cases cited; State v. Bryant, 93 Mo. 302, 6 S.W. 102. This rule, so often asserted by this court, is in accord with that where it is said: 'The true doctrine is that if the juror's conceptions are not fixed and settled, nor warped by prejudice, but are only such as would naturally spring from public rumor or newspaper report, and his mind is open to the impressions it may receive on the trial, so as to be convinced according to the law and the testimony, he is not incompetent.' 2 Grah. & W. New Trials, 378. Now, the opinion of the juror in this case was based upon what he had read in the paper over a year before the trial, since which time he had not thought of the matter. There is but one question left, and that is whether it appears the opinion thus formed is such as not to bias his mind in the trial of the case. Does it appear that the opinion is one which will readily yield to the evidence? *This question, it may be observed,*

*in the first place, is to be tried by the trial court as a question of fact; and the finding of the trial court ought not to be disturbed, unless it is clearly against the evidence. All doubts should be resolved in favor of the finding of the trial court.* McCarthy v. Cass Ave. & F. G. Railroad Co., 92 Mo. 536, 4 S.W. 516. Moreover, the question as to the qualification of the juror must be determined, not from a few catchwords drawn from him by a series of questions, but from his whole examination, including his demeanor while on the witness stand. When he says he would have a prejudice and bias which it would take evidence to remove, and the defendant would have to prove his innocence, he is evidently speaking of the case on the supposition that the circumstances as stated in the newspaper report should turn out to be true. His attention is called to the newspaper account, his opinion thereon, and then the direct and leading questions are asked which bring out the statements. When he is given an opportunity to make a full explanation, it appears he has no bias at all. He understood it to be his duty to disregard the newspaper reports, and this he says he could and would do. His notions of the case were nothing more than such as any one would form from reading a newspaper report, and it is but common information that such reports have little or no influence upon a fair-minded man when he is called upon to determine the fact in the light of evidence given under oath. If such a juror is to be rejected, it must be because he is an intelligent, honest, fair-minded man, and not because he has any opinion which would in the least sway his mind from an impartial consideration of the evidence." (Our emphasis.) Accord, State v. Smith, Mo., 228 S.W. 1057; State v. Stanton, Mo., 68 S.W.2d 811.

The information is sufficient in form and substance. The verdicts are in proper form and responsive to the information and issues submitted. Allocution was

granted and the sentences and judgment are proper and responsive to the verdict.

The judgment is affirmed.

SEILER and STORCKMAN, JJ., concur.

HENLEY, P. J., not sitting.