THE STATE v. BILL WATSON, Appellant.—44 S. W. (2d) 132.

Division Two, December 1, 1931.

*Langdon R. Jones* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *Lawrence Presley* of counsel.

160

WHITE, P. J.—By information filed in the Circuit Court of Dunklin County the defendant was charged with feloniously transporting moonshine whiskey. On a trial December 10, 1929, he was found guilty, his punishment was assessed at three years in the penitentiary, and he appealed.

The principal error assigned is to the action of the trial court in overruling defendant's motion to suppress the evidence on the ground that it was discovered by an unlawful search.

The State's case was made out upon the evidence of Donaldson, Sheriff of Dunklin County, and his deputy, Finney.

July 29, 1929, the sheriff received information that Watson had gone to Butler County after liquor and would return to Kennett. He obtained a search warrant, issued by J. Y. Meharg, justice of the peace in Dunklin County, and started out with Finney in his car.

The sheriff testified that between eight and nine o'clock July 29th, he was driving east, intending to go to Kennett, when defendant came up behind him and passed in a Ford car. The defendant's son was in the Ford with him, driving. The sheriff then started in pursuit and passed the Ford car just after it crossed the Chille de Caw bridge. He testified:

"A. I drove in around him and stopped and flagged him down. . . .

"Q. When you got out of your car and tried to flag him down what did you do? A. I didn't get out of the car; I had Finney get out of the car; I stuck my arm out—looked back and stuck my arm out. . . . I tried to indicate to him to stop, with my arm, and I think I did.

"Q. There was no particular movement of your arm other than the usual putting it out? A. Well, I gave it a kind of wig-wag, whatever you want to call it.

"Q. When you done that he pulled around to the left of you and drove on by? A. No, he stopped.

"Q. He stopped? A. He just stopped.

"Q. Behind you? A. Yes.

"Q. You say you remained in your car? A. I think I just stepped out as he whizzed by me; I don't think I got on the ground until he started his car up; Finney was out.

"Q. When he come by you he wasn't driving very fast? A. Just as fast as a Ford could get off.

"BY THE COURT: As I understand, he stopped or came near stopping about thirty feet behind you? A. Somewhere about that distance; I couldn't say he actually come to a dead stop; I wasn't out; Finney was out and hollered at him to stop and Watson said something, it sounded like 'My God!' I couldn't swear what the statement was, and then he shot the juice and passed us.

"Q. Mr. Finney, your deputy, was outside? A. Yes, he was outside, trying to stop him. . . .

"A. Well, Finney jumped back in the car and we took after him and overtook him at Friendship School House [church] not far down the road. . . ."

There the defendant's car was in the ditch.

"Q. Is that where you overtook the car? A. Just as you pass the south entrance into the church yard was where I caught the car; the car had come to a stop.

"Q. Did you search the car? A. Yes.

"Q. And was the search warrant I have exhibited to you the warrant you searched it under? A. I had that warrant, *but I didn't have to have the warrant, I could tell there was stuff in the car without a search warrant.*

"Q. In what way? A. By the smell.

"Q. Where did you smell it? A. I smelled it when he passed me, as he went by where I tried to stop him. . . .

"Q. Where you tried to stop him? A. Yes sir. . . .

"Q. In what way? A. By the smell.

"Q. Where did you smell it? A. I smelled it when he passed me, as he went by where I tried to stop him. . . .

"Q. Where you tried to stop him? A. Yes sir. . . .

"Q. Acting under this search warrant, Mr. Donaldson, did you find anything in the car? A. Yes, I found six five-gallon kegs of moonshine whiskey.

"Q. What kind of a car was that? A. A Ford.

"Q. Did you open the door and look in it? A. I looked in the window first, it was down; *you didn't have to look in, you could see it.*

"Q. But you stuck your head in the window and observed it? A. Yes, but *I didn't have to, to see it; I saw it when I first went up, the car was stopped and the lights burning.*

"Q. *Could you see it all?* A. *No, part of it was covered with a quilt.*

"Q. Did you move that? A. Yes.

"Q. And went inside the car? A. Yes."

Finney testified to substantially the same facts about the defendant's car passing the sheriff's car, and the sheriff starting in pursuit and passing the defendant's car. He said that the sheriff drove in front of the defendant's car, and then testified:

"A. Well, we was probably twenty-five or thirty feet in front of them.

"Q. You saw Mr. Donaldson stick out his hand? A. Yes, sir. . . .

"Q. This car then slowed down almost to a stop, did it, the car Mr. Watson was riding in at that time? A. Well, that car began slowing down and I got out of our car and started walking to him; I said, 'Bill, wait a minute, I want to see you,' and he shot the juice to it and shot to my right and went by the car I got out of.

"Q. That is what you said, 'Wait, Bill, I want to see you?' A. Yes sir, his lights were right on me.

"Q. You don't know whether he heard you? A. He couldn't keep from seeing me without he shut his eyes.

"Q. You don't say he did see you? A. I say he couldn't keep from seeing me, because I had my hand up, hollered at him."

The witness testified that he chased the defendant and his son until the Ford car "hit soft dirt" and Watson and his son "unloaded," got out and ran off. Finney followed them back to the back side of the church lot, then returned to the Ford car. He then said:

"Q. Then you looked in the car, did you? A. Yes, sir.

"Q. Then is when you found what? A. Six five-gallon kegs of moonshine whiskey.

"Q. Was that in the back of the car? A. Yes sir. . . . .

"Q. Did you open the door? A. I opened the door when I come back to the car myself, yes sir; the right hand door had never been closed; they left the door open when they jumped out running."

In answer to the question whether he had arrested the defendant at the time he searched the car the sheriff answered: "No sir, he had run off."

I. Defendant's counsel was careful to have the sheriff and Finney both say that at the time defendant's car passed them and at the time they passed the defendant's car, so far as they could see the defendant was violating no law. This conclusion of the witnesses is contradicted by the facts stated by them.

After the sheriff had testified as stated above he was asked by the court, "how did you come to be there?" He answered: "I got information—" At that point he was interrupted by an objection from defendant's counsel. Objection was overruled and he said that he had received information between five and six o'clock that Mr. Watson had gone north with his son to get a cargo of liquor. The court overruled defendant's motion to strike this out. The witness then said, still over the defendant's objection, that he received information which he thought was reliable and it "proved to be correct, because it was Watson who was in the car and Watson's boy."

The objection was that this information was pure hearsay; under the pretext of stating why he went to the place to wait for the defendant the sheriff was permitted to state it. It was incompetent and should have been excluded on the ground that it was hearsay. But it is impossible to see how the defendant is harmed by it. The sheriff merely repeated that he had heard what he had already testified to as facts; that he had been informed about what he afterwards saw. It added nothing to the force of his testimony.

II. Appellant claims that the search warrant was invalid because it did not describe the place to be searched "as nearly as may be," as required by Section 11, Article II, of the Constitution. The description is this:

"A Four Door Ford Sedan, License No. 130897, owned and driven by Bill Watson."

It is not suggested that in a warrant to search a moving automobile the place could be any better or more specifically described. It may be conceded that the search warrant here was invalid for other reasons not necessary to consider.

The difficulty of locating a moving vehicle has led some of the Federal courts to hold that an automobile may be searched without a warrant. It is suggested that this court has so held in State v. Hall, 279 S. W. 102, but there the defendant was first arrested and the court distinctly said, l. c. 104:

"The arrest being lawful, and the liquor, which constituted the *corpus delicti,* being within the view of the officer, eliminates from consideration any question as to the illegality of the search warrant as a basis for the suppression of the evidence."

That case cannot properly be quoted as authorizing the search of an automobile without a warrant. Yet, under certain circumstances an automobile might be searched without a warrant. The constitutional provision, Section 11, Article II, of the Missouri Constitution forbids an "unreasonable search," from which people shall be secure in "persons, papers, homes and effects." The Fourth Amendment to the Federal Constitution is the same except that it uses the word "houses" instead of "homes." A search of property, to be unreasonable, must be such as to come under one or more of those designations. An automobile might come under the head of "effects." Could it be so designated when the owner abandoned it on the highway in order to escape arrest? It is not necessary to decide that question here. The provision of the Constitution quoted is not violated where the evidence of the unlawful act is discovered by the officer without a search. In the Owen case, 302 Mo. l. c. 365-367, a number of cases are cited where such evidence was held admissible because discovered without a search, or where the search was of property not designated in the Constitution.

In State v. Zugras, 306 Mo. 492, l. c. 497, the sheriff discovered the stills and barrels of mash in a woodland belonging to the defendant and in his possession, but they were concealed in the brush 150 yards from his residence. The search there was held not to be unreasonable.

In State v. Thurston, 300 S. W. 485, l. c. 486, a charge of transporting intoxicating liquor, motion to suppress the evidence was properly overruled "because the liquor was plainly open to observa-

tion, contained in a dent in the fender with broken bottles all around the ground where the collision occurred. No search was necessary to discover it."

In State v. Cobb, 309 Mo. 89, l. c. 102, a barrel containing wine was found in a rock pile some distance from the defendant's house. It was held that the seizure of the wine was proper without a search warrant.

In State v. Turner, 259 S. W. 427, officers went into a gambling place and while there discovered liquor. This court said, l. c. 428:

"The officers, being lawfully upon the premises, saw the whisky in the possession of the defendant, and therefore the offense of unlawfully possessing the liquor was committed in their presence, and they had the right to seize it and produce it in evidence."

That was a misdemeanor case, but the matter of an unlawful search applies to evidence discovered showing a misdemeanor as well as to evidence showing the commission of a felony.

In State v. Horton, 312 Mo. l. c. 207, the sheriff with an invalid search warrant was lawfully on the defendant's premises and saw defendant's wife "spilling the whisky," and it was held he could testify to "possession;" a motion to suppress was properly overruled.

Here, according to the testimony of both the sheriff and his deputy, they smelled the liquor in the defendant's car; they saw that one of the kegs was leaking; the defendant had abandoned the car and run away; the door was open and the liquor was in sight. Though they discovered additional liquor by a search of the car it added nothing to what they already knew and saw without a search.

It is conceded by appellant that under the circumstances the sheriff had a right to arrest him and to search him and his automobile after such arrest. [State v. Williams, 14 S. W. (2d) 434; State v. Pinto, 312 Mo. l. c. 106-7.] He was not arrested because he fled and escaped when the officers attempted to arrest him. He ran away leaving his ditched automobile. His claim is that in escaping arrest he escaped a search which rightfully could follow the arrest. Unfortunately for him he left the evidence of his unlawful transportation open to the observation of the officer. It is not necessary to decide whether the resistance of arrest would allow a search without a warrant. The evidence was discovered without a search while the officers were trying to effect an arrest.

III. The further point was made that the verdict was insufficient to support the judgment. It was as follows:

"We, the jury, find the defendant guilty as charged and we assess his punishment by three years in the penitentiary."

The verdict is asserted to be invalid because it does not use the word "imprisonment." It occurs to us that punishment in the penitentiary for three years is very much like imprisonment. Possibly the verdict is insufficient, but in making this point the appellant is faced with a dilemma: Either the verdict directs the defendant to be confined or imprisoned in the penitentiary, or else it prescribes no punishment; in the latter case, under Section 3704, Revised Statutes 1929, the court was required to assess the punishment, as the court did.

The appellant cites authorities on the construction of Section 3702 which requires where there are several defendants their punishments are to be assessed separately. [State v. Person, 234 Mo. l. c. 269; State v. Gordon, 153 Mo. l. c. 577.] When that is not done by the jury the court must perform that function: We are unable to see how that principle would support appellant's claim. The cases cited support the validity of the judgment here.

The judgment is affirmed. All concur.