STATE OF MISSOURI, Respondent, v. CHARLES VERNON HAWKINS, Appellant, No. 42295—240 S. W. (2d) 688.

Division One, June 11, 1951.

*Errol Joyce, Nolan M. Chapman* and *Walter A. Raymond* for appellant.

154

*J. E. Taylor,* Attorney General, and *A. Bertram Elam,* Assistant Attorney General, for respondent.

CONKLING, P. J.—Appellant, Charles Vernon Hawkins (hereinafter called defendant), was convicted of grand larceny. From the ensuing judgment wherein his punishment was assessed at 2½ years imprisonment in the state penitentiary he prosecuted this appeal. He was charged with having taken four men's suits and five sets of drapes, valued at $265.00 from the store of J. C. Penney Company, a corporation, located in North Kansas City, Missouri.

Defendant here contends that the trial court erred, (1) in overruling his motion to require the prosecuting attorney to furnish defendant the *addresses* of certain witnesses, the names of whom the prosecuting attorney had theretofore given to defendant's counsel, and which names the state later endorsed upon the information, (2) in refusing to suppress and in admitting in evidence the particular goods and merchandise charged to have been stolen, it being contended by defendant that that evidence was obtained by ''an unlawful and unreasonable search and seizure of defendant's automobile'', and (3) in permitting

claimed prejudicial statements and argument by the prosecuting attorney. Defendant does not here contend that the evidence (if properly admitted) does not establish the offense charged, nor did defendant offer any testimony upon the trial. For reasons hereinafter stated we affirm the judgment appealed from.

It appears from the record before us that about 8 P. M. on April 26, 1949, and while the store was open for business, the defendant and George Bevelle and Roland Kalinka were in the Penney store in question. It had not rained since morning but these three men had raincoats over their shoulders. These three men were looking through the merchandise in the men's suit and in the drapery department. They were acting suspiciously, had a furtive attitude and were glancing around. A customer saw defendant take some draperies off of a counter, place them under his raincoat and the three men walked out of the rear door of the store. Defendant was observed to leave the store by the back door three different times. Those facts were reported to the store management.

The store manager and assistant manager left the store looking for the Penney merchandise and a policeman, and seeking to recover the merchandise and effect the arrest of those who had taken the merchandise. They found the three men (defendant, Bevelle and Kalinka) on the street near a car which was later found to belong to defendant. As Mr. Johnson, the store manager, and a policeman (Mr. Hudgins) came up to defendant's parked car, and as soon as they "looked into it (the car) and saw the merchandise"; the three men (defendant, Bevelle and Kalinka) "started to run". Another officer who was also present, Morgan Duncan, pursued them and Kalinka was captured and arrested. The other two men were not then caught. Looking through the glass windows of defendant's automobile Officer Hudgins saw "a bunch of suits laying on the seat of the car. I looked through the glass, saw them laying in there and some drapes." Hudgins was then standing on the street "looking through the back windows." He did not then open the door of the car. The officer called Mr. Johnson and, through the glass of the car, showed Johnson the suits and drapes lying in defendant's car. Johnson recognized the suits and drapes, lying loose and unwrapped in defendant's car as unsold merchandise from the Penney store. The merchandise was later further identified also by the labels. The car was guarded and a deputy sheriff was called who drove the car to the Police Station. The car doors were not locked. The ignition keys were in the car. At the police station the ▮▮▮ stolen suits and drapes were locked up until turned over to the Prosecuting Attorney. When Kalinka was searched at the police station he had a duplicate ignition key to defendant's car. The car, a Chevrolet, remained at the police station from April 26 until the latter part of August, 1949, when defendant

brought in his certificate of title to the car, claimed and identified it, signed a receipt for it and took the car away.

On March 20, 1950, the prosecuting attorney wrote a letter to defendant's counsel and therein set out the names of nine additional witnesses, and advised counsel that the state intended to ask leave of court to indorse the names of such witnesses on the information. On May 5, 1950 defendant filed a motion in the cause for an order to require the prosecuting attorney to furnish defendant the addresses of such nine witnesses. That motion was overruled. The names of the witnesses were indorsed on the information. Defendant made oral request for such addresses at the start of the trial. On May 9, 1950, defendant filed his motion to suppress evidence and directed specifically to the four men's suits and five sets of drapes charged in the information to have been taken. Ruling thereon was reserved. The case went to trial on May 10, 1950. Upon the trial the motion to suppress was orally renewed and was overruled by the court, and the suits and drapes were admitted in evidence over defendant's objection.

We first consider whether the court erred in overruling defendant's motion to require the state to furnish defendant the addresses of the witnesses above noted. In support of his contention of error defendant cites Sections 545.240 and 545.070 RSMo 1949, State v. Barrington, 198 Mo. 23, 95 S. W. 235, 250, State v. Lindsey, 80 S. W. (2d) 123, Ex parte Welborn, 237 Mo. 297 141 S. W. 31, 33, and State v. Jeffries, 210 Mo. 302, 109 S. W. 614, 620.

There is nothing in either statute cited (nor in any statute we have found) which requires the state to furnish to defendant the *address* of any state witness. It is required by the statutes that "the *names* of all the material witnesses must be endorsed" upon both informations and indictments, but there is neither constitutional nor statutory requirement that the *addresses* of such witnesses be furnished to defendant. It appears that nearly two months (or more) before trial defendant was advised of the state's intention to indorse the names of these witnesses upon the information. We have held that "it is not the manual act of writing the name of a witness upon the indictment, but the fact of knowledge that he will be used, which is important", (State v. Merrell, 263 S. W. l. c. 120) so there can be no possible question here of the timeliness of the notice of the intention of the State to use the witnesses.

The above cases cited by defendant do not rule the question now before us. Those cases and others we have decided (See, Wests Mo. Digest, Criminal Law, Key 628) have ruled the allied and related questions of the necessity and the timeliness of notice to defendant of the intention of the state to use certain witnesses. Our research does not develop that this court has heretofore ruled this precise question of whether the state must furnish defendant the *addresses* of the witnesses it intends to call in a criminal case.

And our conclusion is that the State is not compelled to do so. Absent such a constitutional or statutory requirement defendant was not entitled to the addresses as a matter of absolute right. The State called but five of the nine witnesses. Of those five witnesses: two were law enforcement officers in North Kansas City, one was an employee in the Penney store in North Kansas City and the other two were customers in the store at the time of the theft. When the witnesses were called defendant made no objection to any of them testifying, claimed no surprise, and made no showing whatever of prejudice for the reason he had not been furnished the addresses. Defendant's motion for new trial saves no such question. No showing of diligence was made. It does not even appear that any attempt whatever was made to locate any of those witnesses. Nor does it appear that defendant did not locate the witnesses. But it is clear from the entire record that ▪ defendant was not prejudiced. The trial court heard this question at length and obviously reached the same conclusion. No abuse of the discretion of the trial court appears.

In 23 C. J. S. Criminal Law § 951, p. 260, it is said: "In the absence of statute, accused cannot require the state to inform him as to the residences of witnesses whose names appear on the indictment, even though he may desire such knowledge to ascertain their standing and credibility." See also, Commonwealth v. Applegate, 1 Pa. Dist. 127. We rule that the contention of error is without merit.

▪ We next consider defendant's contention that the court erred in admitting in evidence the articles charged to have been stolen (the suits and drapes) for the reason that they were obtained by unlawful and unreasonable search and seizure of defendant's automobile. Officer Hudgins testified, in part: "Q. * * * And what did you do then? A. Why, I sat there and was checking traffic and the stop light and Mr. Johnson drove by, I knew him and he was all excited, him and another man in the car. Q. Then as I understand it you started out checking cars? A. Checking cars. Q. That is by checking cars just what do you mean by that, looking in them? A. I do. Well, we have had things stolen and (have) looked into them just walking by and glancing into them. That's my job. Q. Well you came to the car after looking into other cars, you say, and this particular car you have described what did you observe as to whether it was locked or unlocked? A. I observed the merchandise that was in the back seat of the car. Some of it fell down between the front seat and the back seat. Q. Did you observe with reference to how the car was locked or the fact it was or was not locked? A. It wasn't locked. Q. Did you observe the key? A. The key was in the car * * * Q. It was unlocked. Had you opened the door at that time to make an examination of this stuff? A. I started to open the door, it was unlocked and I shut the door immediately. * * * Q. Well you started to open the door, you observed the merchandise in there? A.

Yes, sir. Q. Well you did open the door and saw the merchandise and called Mr. Johnson, is that right? A. I got the door open oh, three or four inches and I immediately shut it and I called Mr. Johnson. Q. That's what I say, you opened the door and observed the merchandise on the floor? A. I see that (the merchandise) before. Q. When you looked through the glass? A. Yes. ₰ Q. That's the rear glass of the car? A. The rear glass."

Mr. Johnson, the store manager, testified that with the officer he was searching for an automobile which might have in it the merchandise previously reported to have been taken from the Penney store. He testified, in part: "Q. Tell the jury what you observed in your search? * * * A. The officer called my attention to a car with merchandise in the back. ₍ * * * Q. Tell the jury what you saw inside the car. * * * A. We saw drapes and men's suits. * * * Q. Where were you standing in relation to the car and street when you looked into it? A. I was standing on the street side of the parked car. Q. Tell the jury whether or not you were able to identify any of this merchandise in the car? * * * A. Yes, I was able to identify the merchandise immediately. A. Tell the jury what you identified and how you identified it? * ᾽ * A. I was able to identify the drapes immediately because they are manufactured by a firm out in Seattle, Washington, a firm I contacted while in Portland, by the pattern and make and the suits, of course, for the same reason. Q. Can you tell the jury whether or not you were able to recognize them as having been in your store in your stock previously? A. Yes, sir."

It is defendant's theory (and we quote from page 17 of his brief) that: "Under the testimony of the State's witnesses they observed the clothing in defendant's automobile only by close inspection by peering intently into it through the windows at close range or by opening the door. * * * At that time none of the defendants had been arrested—they did not even start to run until their car was searched." But defendant has not correctly interpreted the record facts.

The record reveals that Johnson left the Penney store looking for the merchandise and a policeman. Officer Hudgins, when found by Johnson, was checking traffic. After telling Hudgins his story, Hudgins joined Johnson. They began looking into various parked cars as they walked by them on the street, "glancing into them." They came to the car of defendant. When they looked into defendant's car and saw the merchandise they were looking for, defendant and Bevelle and Kalinka who were nearby, started to run. All but Kalinka escaped. Officer Hudgins had looked through the rear glass of defendant's automobile and had seen the stolen merchandise. He called Johnson, who likewise looked through the glass, saw the merchandise and identified it as having been in the store. The car was not locked and it does not appear whether the side windows were open or closed,

After the merchandise was found in the car the officer opened the door three or four inches and immediately closed it. A deputy sheriff was called who immediately drove the car (with the stolen merchandise in it) to the police station.

Under these facts defendant's contention as to unlawful and unreasonable search and seizure cannot be sustained. Constitutional guaranties against unreasonable search and seizure apply where seizure is brought about by an unlawful search. Those guaranties are not infringed where the recovery and possession of property theretofore stolen is accomplished *without search* and where such property lies fully disclosed, open to the eye and in plain view. Where the evidence of an unlawful act is discovered by the officer without a search there is no violation of those constitutional guaranties. A search, within the constitutional provisions invoked, basically involves "of necessity, a quest for, a looking for, or a seeking out of, that which offends against the law. It implies a prying into hidden places for that which is concealed." Observation of that which is open to view is not a search. A search (such as is prohibited by the constitutional provisions invoked) is not made by merely looking at that which can be seen. "It is not a search to observe that which is open and patent in either sunlight or artificial light."

The just above stated principles have been widely announced. State v. Watson, 329 Mo. 158, 44 S. W. (2d) 132, 135, State v. Thurston, 300 S. W. 485, 486, 47 Am. Juris., Searches and Seizures, p. 516, State v. Owens, 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383, Crowell v. State, 147 Tex. Cr. R. 299, 180 S. W. (2d) 353, Koscielski v. State, 199 Ind. 546, 158 N. E. 902, Murphy v. District of Columbia, 31 Atl. (2d) 894, State v. Christensen, 151 Or. 529, 51 Pac. (2d) 835, 838, State v. Miller, 121 Wash. 153, 209 Pac. 9, People v. Marvin, 358 Ill. 426, 193 N. E. 202, State v. Quinn, 111 S. C. 174, 97 S. E. 62, United States v. Lee, 274 U. S. 559, 47 Sup. Ct. 746, 71 Ed. 1202, United States v. Strickland, 62 Fed. Supp. 468, Smith v. United States, 2 Fed. (2d) 715, 716, McCanless v. Evans, 177 Tenn. 86, 146 S. W. (2d) 354, Bone v. State, (Miss.) 43 Sou. (2d) 571.

Defendant cites State v. Jones, 358 Mo. 398, 214 S. W. (2d) 705, State v. Smith, 357 Mo. 467, 209 S. W. (2d) 138, State v. Wilkerson, 349 Mo. 205, 159 S. W. (2d) 794. They are not in point here, their facts readily distinguishing them. In the Jones case the jimmy, in the Smith case the typewriters and tools, and in the Wilkerson case the automobile and the certificate of title were all seized and taken by the officers as a result of unlawful search. They were not open to view.

But in this case there was no search. Here it did not require any search at all to discover the suits and drapes readily ██ identified as having been stolen when lying uncovered in the car. They were all in the plain view of Johnson, who, as agent of the owner, was entitled

to possession, and of the officer. In State v. Watson, supra, an officer in an automobile stopped the defendant riding in a car on a road at night. Defendant fled in his car. The officer pursued in his car. Defendant, while pursued by the officer, ran his car into a ditch at the roadside, jumped out of the car and fled the scene on foot. Going to defendant's car the officer saw therein a number of kegs of contraband whiskey which he seized. Upon a prosecution for transportation of the whiskey defendant filed a motion to suppress the whiskey as evidence. The motion to suppress was overruled. Upon appeal we sustained the trial court. The precise question now before us was fully considered in the Watson case. In ruling that case this court said, in part: "The (search and seizure) provision of the Constitution quoted is not violated, where the evidence of the unlawful act is discovered by the officer without a search. In the Owens case, 302 Mo. loc. cit. 365-367, 259 S. W. 100, 32 A. L. R. 383, a number of cases are cited where such evidence was held admissible because discovered without a search, or where the search was of property not designated in the Constitution. * * * He (defendant) was not arrested because he fled and escaped when the officers attempted to arrest him. He ran away leaving his ditched automobile. His claim is that in escaping arrest he escaped a search which rightfully could follow the arrest. Unfortunately for him, he left the evidence of his unlawful transportation *open to the observation of the officer.* It is not necessary to decide whether the resistance of arrest would allow a search without a warrant. The evidence was discovered *without a search* while the officers were trying to effect an arrest." (Emphasis ours.)

The principles upon which that case was ruled are controlling here. This defendant fled for the obvious purpose of escaping arrest when he saw that Officer Hudgins and Mr. Johnson had apparently discovered the stolen property in his automobile. He did not even claim his automobile for four months. The suits and drapes were lying in the car in open public view. No search, with or without a search warrant, was necessary. It cannot be successfully contended that, under these circumstances, when the true owner of stolen property finds and sees such stolen property lying open to public view and in the possession (actual or constructive) of another, that the true owner may not seize and recover such stolen property until and unless he has armed himself with a search warrant. As was suggested by this court in State v. Owens, supra, "* * * the delay in obtaining a search warrant would give time to the rapidly moving vehicles to be beyond the reach of the officers or to have disburdened itself of its load." Under these circumstances there was no infringement of the constitutional guaranties respecting search and seizure. The trial court did not err in overruling the motion to suppress, and defendant's

objection to receiving the merchandise in evidence was correctly overruled.

It is next contended by defendant the trial court erred in refusing to discharge the jury because of an incident which occurred during the voir dire examination of the jury. During that examination the prosecuting attorney started to ask the panel a question as to the effect a previous difficulty of defendant would have upon them, but, before the question was completed, he was interrupted by defendant's counsel. The question was not completed and it was not asked. Defendant's position is that enough was stated in the interrupted and unfinished question to warrant the granting of defendant's motion to discharge the jury. We cannot agree to this contention. The trial court sustained defendant's objection made when the prosecuting attorney's question was interrupted. The jury was instructed by the court to disregard implication of the interrupted interrogation and defendant's motion to discharge the jury was overruled.

No fixed and inflexible rules may be laid down which may in all cases determine the extent to which counsel may go in the examination of jurors upon voir dire. Such examination is, and here was, conducted under the watchful eye and the constant and alert supervision and direction of the trial court. The conduct of such voir dire examination and its possible effect upon the prospective jurors and its effect, if any, upon the trial atmosphere and background, must be left largely to the sound discretion of the trial court. Such discretion will not be interfered with unless a clear and obvious abuse thereof appears. State v. Hoffman, 344 Mo. 94, 125 S. W. (2d) 55, State v. Heickert, (Mo. Sup.) 217 S. W. (2d) 561. It may be conceded that the question, if it had been finished, was not a proper one. Counsel should not ask jurors to speculate upon what they might do or how they might be affected by certain contingencies that may later arise during the trial. Counsel for the state did not further pursue the matter, Judge Davis admonished the jury to disregard the unfinished question and it is apparent from the entire record that the latter was satisfied that there was no harmful or prejudicial effect upon the jury. No abuse of the discretion of the trial court appears in this respect and we rule the contention made against defendant.

Defendant also contends that certain statements made in the argument of the State's counsel to the jury were unfair and prejudicial. It is unnecessary to so unduly lengthen this opinion as to here set out in full the argument and those matters which, to us, make most of the argument pointed out a fair inference from the facts adduced. As to some of the prosecuting attorney's statements the trial court complied with defendant's full request and admonished State's counsel. Parts of the argument objected to were clear and legitimate inference which the State's counsel could draw from the

undisputed facts. State v. Conrad, 322 Mo. 246, 14 S. W. (2d) 608, State v. Sinovich, 329 Mo. 909, 46 S. W. (2d) 877. The entire record has been carefully examined and we find that when there was even doubt as to the merits of the objection that defendant was sustained and his full request to instruct or admonish was granted by the court. Upon the entire record we find no merit in this assignment of error.

We find the information, verdict and judgment in proper form. Defendant was granted allocution. He had a fair trial, and was most ably defended. Upon the undisputed evidence the jury could and did find him guilty. The judgment of the circuit court must be and hereby is affirmed. It is so ordered. All concur.