**STATE of Missouri, Respondent,**

v.

**Isaac Terrel SANDERS, Appellant.**

No. 46468.

Supreme Court of Missouri,

Division No. 1.

June 9, 1958.

---

No attorney for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

Defendant Isaac Terrel Sanders was on May 22, 1957, convicted by a jury in the Jackson County Circuit Court on a charge of robbery in the first degree and his punishment was fixed at 5 years' imprisonment in the State Penitentiary. After his motion for new trial was overruled, defendant was sentenced. From that sentence he appealed to this court.

No brief was filed for the defendant in this court so we shall consider the assignments of error in the motion for new trial.

It is claimed that the trial court should have granted defendant's request for

judgment of acquittal at the close of all the evidence. This contention, as we shall see, is without merit. The State's evidence was that about 6:45 o'clock on the evening of January 18, 1957, four or five men participated in robbing the Parkview Drug Store located at 27th and Benton Streets, Kansas City, Missouri. Mr. Uel Dunning, manager of the store, was on duty at the tobacco counter where his register was robbed by one of the participants. One of the men with gun in hand forced the assistant manager, Mr. Anthony J. Ruiz, to go from one cash register to another, to take the cash therefrom and place it in a paper bag which was being held by one of the accomplices. At the same time, two others were doing the same thing with the employees of the store. There were eight cash registers in the store. One of the men remained at the front door and with gun in hand kept the customers present from leaving the store. The robbery seems to have been well planned. At least Harold Craig, who testified for the defendant and who took credit for the planning, thought so. Note his evidence on this point:

"Q. Was that after the P & G robbery? A. That was before the P & G.

"Q. Before. Now, this was a pretty smooth job out there at Twenty-seventh and Benton, in your opinion? A. (Nodded)

"Q. As a robbery? A. I think it was pretty good, yes, sir..

"Q. You planned it? A. Yes.

"Q. And there weren't any hitches and it went off and went off quick, is that right? A. Yes.

"Q. You simply walked in and split up into two groups, I guess? A. Yes, sir, that is right."

The evidence connecting Sanders, the defendant, with this crime consisted of a statement signed by Sanders wherein he admitted taking part in the planning as well as in the robbery itself. One of the employees in the store at the time testified that in her opinion Sanders was one of the men. Her exact evidence was that the defendant "looks like the boy that took the money from my register." She testified that the defendant had long hair which could be noticed even though he had on a cap which had been pulled down. Note what she said: "Well, the hair style. His hair was long, stuck out from under the cap, and he had on a cap pulled down in front and behind." This witness was taken to the "show-up" room at police headquarters where she pointed out the defendant from a number of men as looking like the man who took the money from the register.

Some days after the holdup, one of the men was arrested and he implicated a number of others, including Craig. The police went to Craig's apartment. After they had waited some time, Craig appeared and he was sent to police headquarters. Officers remained at the apartment and soon the defendant appeared and he, too, was taken into custody. Craig entered a plea of guilty and was sentenced to the penitentiary. At defendant's request, Craig was present at the trial and testified for the defendant. His evidence was that Sanders had no part in the robbery. Craig had signed a statement before he entered a plea wherein he implicated Sanders. When questioned about that, he said that he did not at the time implicate Sanders; that the police insisted that Sanders took part in the robbery and that Sanders was present at the time and said, " 'Well, I'd just as well be on that, because I don't want to go to Kansas on that robbery charge.' " Craig evidently did not have a high regard for his accomplices. Note the following included in Craig's statement given to the police:

" 'Question: Who would you say was the leader of this holdup or in other words the brains?

" 'Answer: I was. There ain't none of the others got enough brains to plan a job like this.' "

It was also in evidence that defendant and others in jail on the Saturday before defendant's trial made their escape from custody. It must have been a rather spectacular escape. A number of the attendants at the jail were locked in a refrigerator; the inmates took charge of an elevator and made their escape. A sawed-off shotgun and an ice pick were used to compel compliance with orders given by the inmates. Defendant's freedom was of short duration. He was taken into custody on Sunday. His case had been set for the following day and it was tried. We rule that the evidence was sufficient to support the verdict of the jury.

■ Defendant, in his motion for new trial, stated that his case should have been continued because of publicity concerning the escape through the newspapers, radio, and television. The prospective jurors on voir dire were questioned on this subject and the record does not reveal that any of the panel finally selected was prejudiced against the defendant. Furthermore, this whole disturbance creating the publicity was of the defendant's own making. He is in no position to complain and certainly the trial court's ruling was not an abuse of discretion. State v. Golden, 353 Mo. 585, 589, 183 S.W.2d 109, loc. cit. 111–113 (1–3); State v. Taylor, 320 Mo. 417, 8 S.W. 2d 29, loc. cit. 34(5–8); 22 C.J.S. Criminal Law § 497 p. 788; State v. Gilmore, 336 Mo. 784, 81 S.W.2d 431, 432(1).

■ While the voir dire examination was in progress, one of the members of the panel (excused by the trial court), in answer to a question concerning defendant's escape from jail, stated that in his opinion if the defendant escaped from jail he would think the defendant guilty. Defendant, through his attorney, asked that the panel be discharged. This request was refused and the ruling was made the basis of an assignment of error. The record shows that the questioning was for the very purpose of determining whether the fact that the escape which had been the cause of much publicity would prejudice the jurors against the defendant. Defendant's attorney did much of the questioning. The trial court permitted the voir dire examination to cover a wide range. About ninety pages of the record were devoted to it. We rule that in the circumstances the trial court was justified in refusing to discharge the panel. State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, loc. cit. 693, 694(8, 9).

■ Error was assigned to the ruling of the trial court in permitting the State to examine Harold Craig with reference to the statement he had signed wherein he had implicated the defendant. The particular objection made is that a carbon copy was used instead of the original. The statement itself was not used as evidence. Its only use was to impeach Craig as a witness. He admitted the statement used was correct and he made an explanation of the circumstances which caused defendant's name to be in the statement. In view of such an admission by Craig, no error was committed in the ruling of the trial court. State v. Trice, 338 Mo. 744, 92 S.W.2d 135, loc. cit. 136(1).

■■ In the motion for new trial, it is stated that the verdict of the jury was not proper. The State claims this assignment is insufficient. However, we examine matters of record even though not mentioned in the motion for new trial. The verdict reads, "We, the jury, find the defendant Isaac Terrel Sanders guilty of robbery, First Degree as charged, and assess his punishment at 5 years in the State Penitentiary." It would have been more accurate if the verdict had read "at 5 years' imprisonment in the State Penitentiary." Such a defect is not material nor fatal.

We have considered all assignments of error contained in the motion for new trial which were sufficient to preserve any question for review. Matters of record have been examined and we find no prejudicial error therein.

The judgment is affirmed.

All concur