**STATE of Missouri, Respondent,**

v.

**Finis Sylvester RANKIN, Appellant.**

**No. 56569.**

Supreme Court of Missouri,
Division No. 2.

March 13, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Kansas City, of counsel.

HOUSER, Commissioner.

Finis Sylvester Rankin was convicted by a jury of second degree murder, his punishment was fixed at life imprisonment, and sentence and judgment were rendered accordingly.

The sole point preserved for review on this direct appeal is that the court erred in overruling appellant's motion to suppress a pistol as evidence for the reason that his arrest was unlawful and the search of his automobile and seizure of the pistol violated rights guaranteed him by Article I § 15, Constitution of Missouri, 1945 and Amendment XIV to the Constitution of the United States. At the hearing on the motion to suppress there was evidence from which the court could have found these facts:

About 9:30 o'clock at night on February 9, 1970 Officers Hoffecker and Kun of the

Kansas City Police Department, returning in a police car from a call, approached the area of 31st Terrace and Wyandotte. There is a parking lot next to the Interstate Vending Company (at No. 30 West 31st Terrace) on which trucks frequently parked. The officers knew that there had been several cases of larceny of trucks from that place; "several alarms had gone off" at Interstate Vending Company. The officers had made it a practice to stay in that area "as much as possible." As they approached the parking lot, which they "used to write reports and such," the officers observed a 1963 Chevrolet parked in the lot at the west side of No. 30 West 31st Terrace, next to several large moving-van type trucks parked on the lot. There were two persons in the Chevrolet. Its lights were off. As the police car began to turn into the parking lot and approach the Chevrolet the headlights of the Chevrolet were turned on, the Chevrolet started, and it proceeded out of the parking lot and north through an alley towards 31st Street at a speed of 25–30 m. p. h. When the Chevrolet turned right on 31st Street its speed accelerated. The suspicions of the officers were aroused by the fact that the persons in the Chevrolet left at about the time the police car showed up; that the speed at which they made their exit was "rather fast for a parking lot"; because the officers had been keeping a close surveillance of this parking lot on account of the numerous acts of vandalism, burglaries and thefts of trucks which had occurred there, and because it was "sort of out of way and unusual for anybody to be in there." The officers were apprehensive because of the presence of the two men in this particular parking lot at that time of night and the possibility that they were in the process of or contemplating criminal activity in connection with the parked trucks. The officers followed the Chevrolet down the alley, and around the corner. At the trial Officer Hoffecker testified to one additional fact calculated to arouse suspicion and justify temporary detention for investigation, namely, that as the police car was following the Chevrolet he saw the passenger in the Chevrolet (Brown) "bend forward, and it appeared that he was either placing something or removing something from the front of the seat." Using the siren and red light, the officers stopped the Chevrolet just west of the intersection of 31st and Main. The Chevrolet stopped ahead of the police car. Appellant was driving. Kenneth Brown was seated in the right front seat. Officer Hoffecker, driver of the police car, got out of the police car and approached the Chevrolet on the right side. Officer Kun walked to the left front of the Chevrolet, asked the driver (appellant) to step out of the car, which he did. Officer Hoeffecker made the same request of passenger Brown. Officer Kun motioned both men to the back of the police car. There he asked to see appellant's driver's license, asked for "some identification," checked their identification and asked questions about what they were doing there. When Brown stepped out of the Chevrolet Officer Hoffecker observed what appeared to be a weapon lying on the floor board of the front seat of the Chevrolet. The barrel was under the seat, the handle of the gun "sticking forward." The handle of the gun was in plain sight. The officer, by looking inside the car, could see it in the light from nearby street lights, without the aid of a flashlight—"it was pretty well lit up." Officer Hoffecker reached down and picked up the gun from the floor of the Chevrolet. (A .25 calibre automatic pistol, shown by ballistic tests to have been the weapon used in the killing, and shown by other evidence to have been in appellant's possession prior to the alleged murder.) Officer Hoffecker then placed the two men under arrest for carrying concealed weapons. After the arrests the officers searched the persons of Brown and appellant and found a jackknife on appellant's person. (Brown and appellant subsequently entered pleas of guilty to municipal court charges of carrying a concealed weapon—the pistol in Brown's case; the knife in appellant's case.) After the arrest the officers also searched the Chev-

rolet, without a warrant, for other contraband, but found none. Appellant was the owner of the Chevrolet, which was properly registered.

At the time the officers observed, followed and stopped the Chevrolet no specific criminal activity had been reported to the officers on the radio, no crime was in progress, the officers were not investigating any particular crime, and the Chevrolet was not violating any traffic regulation.

Appellant argues that the pistol was not proper evidence because it was the fruit of an illegal search not made as an incident to a lawful arrest; that the arrest was unlawful because appellant had not committed a misdemeanor in the officers' presence; there was no reasonable cause to believe that a felony had been committed, and the officers had no arrest warrant or search warrant.

This argument is based upon two false premises: that there was an arrest and a search incidental to an arrest, and that the pistol was discovered as a result of a search.

■ The discovery of the pistol was not made in connection with or as an incident to an arrest. Stopping the Chevrolet and momentarily detaining its occupants for investigation and inquiry did not constitute an "arrest," but merely a lawful temporary detention based upon reasonable suspicion under the power granted Kansas City police officers by statute "to stop any person abroad whenever there is reasonable ground to suspect that he is committing, has committed or is about to commit a crime and demand of him his name, address, business abroad and whither he is going." RSMo 1969, § 84.710, subd. 2., V.A.M.S. Under the circumstances shown in evidence the officers were performing a legitimate investigative function when they stopped the Chevrolet and made inquiry. It is clear that an officer has a right to stop an automobile to make a routine check for an operator's license. United States v.

Turner, 8 Cir., 442 F.2d 1146 (1971). And where officers entertain a reasonable suspicion not amounting to probable cause to believe that criminal activity may be occurring they may stop the suspected person, identify themselves, require the suspect to identify himself, and make reasonable inquiries concerning his activities, without being adjudged to have made a formal arrest. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906. It was in the course of such a temporary and proper investigatory detention that the pistol was seen by one of the officers. The pistol was not discovered subsequent to or in the course of a formal arrest. It was only *after* the pistol was discovered in open view and taken into lawful custody by the officers *without a search* that the arrests and search of the Chevrolet were made. The pistol was taken before and not as a result of or as incidental to the arrests.

■■ The discovery of the pistol was not made as a result of a "search," but under the "plain view" doctrine. No search was necessary to discover it. From the testimony of the officers it is clear that there was no prying into hidden places for intentionally secreted objects. Instead, the handle of the pistol fell within the plain view of the officer when the right front door of the Chevrolet was opened and the passenger alighted from the vehicle. There can be no unreasonable search and unlawful seizure absent a search in the first instance. State v. Jackson, Mo.Sup., 476 S.W.2d 540 (decided February 22, 1972). "The provision of the Constitution * * * [prohibiting unreasonable searches and seizures] is not violated, where the evidence of the unlawful act is discovered by the officer without a search." State v. Watson, 329 Mo. 158, 44 S.W.2d 132, 134 [4]. "Observation of that which is open to view is

not a search. A search (such as is prohibited by the constitutional provisions invoked) is not made by merely looking at that which can be seen." State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 692, cited and quoted with approval in numerous cases referred to in State v. Camper, Mo.Sup., 353 S.W.2d 676, 679, in which it was reiterated that the constitutional guaranties in question are not infringed where the property in question " 'lies fully disclosed, open to the eye and in plain view.' " In Camper, as in the case here for review, the offensive articles were in the open and plain view of the investigating officer who looked into the interior of an automobile. And see Harris v. United States (1968), 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069; United States v. Jones, 8 Cir., 452 F.2d 884 (decided December 16, 1971.)

The cases relied upon by appellant [1] are all distinguishable on the facts, for in each of them it is clear that the officers actually conducted a search; in none of them was the plain view doctrine involved. For instance, in State v. Cuezze, supra, the Court specifically noted that "the revolvers could not be seen by merely looking into the car as was the case in State v. Hawkins * * * where the stolen property could be seen by anyone walking by the parked automobile." 249 S.W.2d l. c. 376.

No error appearing, the judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., HENLEY, J., and FINCH, Alternate Judge, concur.

DONNELLY, J., not sitting.

1. State v. Owens, 302 Mo. 348, 259 S.W. 100; State v. Cuezze, Mo.Sup., 249 S.W. 2d 373; State v. McBride, 327 Mo. 184, 37 S.W.2d 423; State v. Morice, Mo.Sup., 79 S.W.2d 741; State v. Hunt, Mo.Sup.,

280 S.W.2d 37; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171.