STATE of Missouri, Respondent,

v.

John Everett POOR, Appellant.

No. 36261.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Feb. 3, 1976.

Theodore S. Schechter, Clayton, for appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

John Everett Poor, charged under the Second Offender Act, § 556.280 RSMo 1969, was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon and was sentenced by the Court to the custody of the Department of Corrections for a term of fifteen years. He has appealed from the ensuing judgment. Although we find it necessary to reverse the judgment, we shall rule certain issues which likely will recur in the event of a new trial.

Appellant first contends that the evidence was insufficient to submit the case to the jury.

About 8:30 o'clock of the evening of October 25, 1972, a person identified as Douglas Smith held up the National Food Supermarket at 7800 Morganford in the City of St. Louis, and by the use of a revolver took $650.00 from Michael O'Brien, the assistant manager. Mr. O'Brien described the robber as being in his "early twenties," wearing an army type fatigue jacket, and having dark brown hair and a moustache. Smith told Mr. O'Brien to remain in the store, and he then left the building and went toward the parking lot. Mr. O'Brien saw no other person acting with or aiding him.

About the same time Gerald Spitznagel, a former policeman but who then was securi-ty manager for the United Parcel Service, drove into the parking lot of the supermarket. He observed a person come out of the store and walk toward the parking lot. He was in his "middle twenties," of medium build, wearing an army fatigue jacket, had "sort of long hair," and he had "something like a moustache." Because of the way he held his hand, Mr. Spitznagel continued to observe him as he walked to and entered the passenger side of a brown Cadillac. He spoke "momentarily" or for "a second" to the driver, and the Cadillac was then driven from the lot. The driver was wearing a dark coat or jacket, had dark hair, and had "some kind of discrepancies on his face." Mr. Spitznagel wrote down the license number of the Cadillac and gave it to the police.

Mr. Spitznagel was not able to make a positive identification of Smith at a lineup as the person he saw leave the store and enter the Cadillac because, as he said, at the lineup he no longer had the moustache and the long hair, but he stated that one of the persons in the lineup, who was in fact Smith, looked similar to the person he saw leave the store and enter the Cadillac. At the trial he identified a photograph of Smith as being the person he saw enter the Cadillac, and Mr. O'Brien identified the same photograph as being the person who was the robber. At a separate lineup Mr. Spitznagel immediately recognized and identified appellant as the person who was waiting in the Cadillac and who drove it away after Smith got into it.

The morning following the robbery, Sergeant Menniges of the St. Louis Police Department determined that the license number written down by Mr. Spitznagel had been issued to Douglas Smith, Mehlville, St. Louis County, Missouri. He and several other officers went to that address but the Cadillac was not there. It was seen shortly thereafter being driven into the apartment complex by appellant with another person in the passenger side.

When the police questioned appellant he admitted that he had a "half interest" in

the Cadillac automobile, and he also admitted that he had driven the Cadillac the previous night. He stated, however, that he had been at his wife's home from 6:00 to 10:30 o'clock in the evening. Officer Baldwin called appellant's wife at work, and she stated that she had worked the previous evening until 11:15 o'clock and did not see appellant until after that time. After appellant was identified in the lineup by Mr. Spitznagel, he changed his story and told the police that he actually had been at his mother's house until 10:30 o'clock, and it was thereafter that he had gone to his wife's home.

Appellant did not testify, but his wife testified that on the evening of October 25, 1972, appellant called her and suggested that they attempt to resolve their marital differences, and that she met him at her home at 6:40 o'clock. She saw appellant arrive at her apartment in a brown Cadillac. They stayed together until 10:30 o'clock, and when they left the Cadillac had been moved and was parked in a different place.

■ In determining the issue of whether a submissible case was made, we view the evidence most favorable to the State, *State v. Wilson*, 436 S.W.2d 633 (Mo.1969), and take into consideration the favorable inferences reasonably to be drawn therefrom. *State v. Petrechko*, 486 S.W.2d 217 (Mo.1972). Evidence to the contrary is not considered. *State v. Morris*, 518 S.W.2d 79 (Mo.App.1974). We are not to weigh the evidence, *State v. Bizzle*, 500 S.W.2d 259 (Mo.App.1973), or substitute our judgment for that of the jury. *State v. Gamache*, 519 S.W.2d 34 (Mo.App.1975). Instead, we are to determine only whether as a matter of law a jury could reach a verdict of guilty if the members believed the evidence and inferences favorable to the State. *State v. Lee*, 404 S.W.2d 740 (Mo.1966).

■ Under the facts of this case we necessarily are to be governed by certain other basic general principles. All persons who aid or encourage the commission of a criminal offense may be found guilty as a principal. *State v. Gamache*, supra at p. 39. While evidence only to the effect that an accused had an opportunity to aid and encourage another in the commission of an offense, which merely raises a suspicion that he did so, is insufficient to sustain a conviction, any evidence showing that he knowingly and intentionally aided or encouraged another is sufficient to sustain a conviction, and such proof may be by circumstantial evidence. *State v. Rossini*, 418 S.W.2d 1 (Mo.1967).

■ Tested by these legal principles, we are convinced that a submissible case was made and that the trial court did not err in overruling appellant's motion for judgment of acquittal. The Cadillac was registered in the name of Douglas Smith but appellant admitted that he had an interest in it, and by his admission and other evidence it was shown that on occasions he operated the automobile. Smith was identified by Mr. O'Brien as the robber. Mr. Spitznagel identified a photograph of Smith as being a photograph of the person he saw leave the store and enter the Cadillac. These facts and the time sequence of Smith leaving the store and Mr. Spitznagel observing a person closely fitting his description, without evidence of anyone else leaving the store at the time, clearly justified a finding by the jury that Smith was the person who robbed the store and went to the Cadillac automobile in which appellant was waiting. The act of appellant waiting for Smith and driving him away from the store area constituted an affirmative participation on his part. The only question is whether that participation was with knowledge of unlawful conduct on the part of Smith. The issue of intent or knowledge, in the absence of direct testimony of the person involved, is usually not subject to direct proof but must be inferred from the facts and circumstances. *State v. Chevlin*, 284 S.W.2d 563 (Mo.1955); *State v. Holmes*, 364 S.W.2d 537 (Mo.1963). Here, after committing the robbery Smith went to the waiting

Cadillac automobile, but apparently with nothing he had purchased in the store. Appellant told conflicting stories as to where he had been at the time of the robbery; changing to the second story only after his first was disproved. All of the circumstances could be considered by the jury in determining the purpose of appellant's presence in the Cadillac automobile. The circumstances need not of themselves be conclusive, and they need not demonstrate an absolute impossibility of innocence. *State v. Maxie,* 513 S.W.2d 338, 343 (Mo.1974). But when they point so clearly and satisfactorily to defendant's guilt so as to exclude every reasonable hypothesis of innocence, as they do in this case, they are sufficient to authorize a finding of guilt by a jury. *State v. Aguilar,* 429 S.W.2d 754 (Mo.1968). This result also disposes of Point IX wherein appellant contends there was insufficient evidence to support the submission of Instruction No. 5 in the form of MAI–CR 2.10.

Appellant's second point is that the trial court erred in admitting into evidence certain items taken by the police from the Cadillac automobile.

Officers Ackins and Menniges had a description and the license number of the automobile reported to have been used in the robbery, and they knew that the license had been issued to Smith whose address was listed as Mehlville, Missouri. They also knew that two persons had driven away from the scene of the robbery, and the next morning when they went to the address of Smith they saw the Cadillac, and again there were two persons in the automobile. In the investigation of the automobile reported to have been used in the robbery, it was important to determine, if possible, the identity of the person who was not Douglas Smith, the registered owner. Some of the officers went to Smith's apartment, and Officer Ackins went to the automobile. While outside the automobile he observed in the automobile, but in plain sight to him, several envelopes and a magazine. He opened the unlocked door and saw that each had the name of "Poor" as the addressee. This may have constituted a technical trespass, but if so it would not affect the legality of the subsequent conduct of the officer. *United States v. Young,* 322 F.2d 443, 445 (4th Cir. 1963). Either at the time or a short time later the police took possession of these envelopes and the magazine, and at the trial they were introduced into evidence over appellant's objection that they had been obtained by the police as the result of an unlawful search and seizure.

■ The discovery of the envelopes and the magazine was not made in connection with or as an incident to an arrest. The discovery was made in the course of a proper investigation of a reported robbery, and was not made as a result of a "search" but occurred under the "plain view" doctrine. No search was necessary to discover them. There was no prying into hidden places for intentionally secreted objects. The evidentiary value to the State was the name of the addressee on the outside of the envelopes and the magazine. There can be no unreasonable search absent a search in the first instance. *State v. Rankin,* 477 S.W.2d 72, 75 (Mo.1972). "The provision of the Constitution  *  *  *  [prohibiting unreasonable searches and seizures] is not violated, where the evidence of the unlawful act is discovered by the officer without a search," *State v. Watson,* 329 Mo. 158, 44 S.W.2d 132, 134 (1931), and "Observation of that which is open to view is not a search. A search (such as is prohibited by the constitutional provisions involved) is not made by merely looking at that which can be seen." *State v. Hawkins,* 362 Mo. 152, 240 S.W.2d 688, 692 (1951). See also *State v. Camper,* 353 S.W.2d 676 (Mo.1962), and the cases there cited.

Appellant relies primarily on *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We have some question concerning the effect of that case on the law relating to search and seizures because only four members of the court, less than a majority, concurred in what at least

appears to be the principal opinion. However, we consider that case not to be controlling. In the *Coolidge* case the police knew that a certain automobile probably had been used in the commission of a crime, and it was seized and searched. Sweepings from the automobile, obtained as a result of that search, were admitted in evidence. It was argued that the automobile was an instrumentality of the crime and as such could be seized because it, the automobile, was in plain view and it then could be searched. In rejecting this argument Mr. Justice Stewart, not too helpfully, discusses the plain view doctrine. But in this case the presence of the envelopes and the magazine did not result from a seizure of the automobile and a subsequent search of it, which was the factual situation of the *Coolidge* case. Instead, the officer, standing in a place where he was entitled to be, observed the items in plain view. Therefore there was no search. We find no error in admitting into evidence the envelopes and the magazine.

Assuming however, that for some reason it could logically be argued that the plain view doctrine is not applicable, we would find no basis for reversal of the judgment. The only purpose of the evidence was to connect appellant with the Cadillac automobile. But, Sergeant Menniges testified that appellant admitted to him that he had part ownership of the automobile, Mr. Spitznagel identified the automobile as the one he saw appellant operating, Sergeant Menniges testified that he saw appellant operating the automobile when the officers first went to the apartment complex, and appellant's wife testified that appellant drove the automobile to her apartment and that she had seen him drive it on several occasions. The only issue to which the envelopes and the magazine were material was clearly established by other evidence. Therefore, the evidence at most was only cumulative, and could not in any event be grounds for the reversal of the judgment.

Appellant next asserts that the court erred in overruling his motion "to suppress 'mug shots' " and in permitting the jury to view his "mug shot" because this "raised in the minds of the jurors the inference that [he] had a prior criminal record or was a police character."

After a hearing on appellant's pre-trial motion to suppress what he called "mug shots," the court ruled that it would permit reference to them as photographs or pictures but would not permit them to be shown to the jury because each had a police number or identification on it. The term "mug shot" was not used within the hearing of the jury.

■ During the trial, the accuracy of the identification of appellant by Mr. Spitznagel was vigorously contested, and appellant cross-examined him at length as to whether he had seen pox marks, or what he described as "descrepancies," on appellant's face when he observed appellant on the parking lot. The officer who had conducted the lineup in which appellant was identified by Mr. Spitznagel testified that no one in the lineup had pox marks. On cross-examination, the State's attorney offered in evidence a photograph of appellant taken one day after the lineup "to show the facial complexion of the defendant." Apparently the photograph had on it the "department number 191993," but this is not clear and the exhibit has not been filed with this court. After appellant's objection to the admission in evidence of the photograph was overruled, the State's attorney requested that "the exhibit be passed to the jury." No objection whatever was made to that request, and there was no request that if the exhibit was to be shown to the jury that the "department number" be deleted or covered.

The jury was told that the robbery occurred on *October 25*, that the lineup was held on *October 26*, and that the photograph was taken on *October 27*. Therefore, the existence of this particular photograph with a "department number" on it could not give rise to an inference that it came into existence because of a *previous* crimi-

nal record. Any ordinary intelligent juror would have known that this particular photograph had been taken in connection with the investigation of the charge for which appellant was then being tried.

The photograph was material to the highly contested issue of the appearance of appellant and the correctness of the identification by Mr. Spitznagel, and it was properly admitted into evidence. *State v. Childers*, 313 S.W.2d 728 (Mo.1958); *State v. Carson*, 501 S.W.2d 503 (Mo.App.1973). The only objectionable portion, if there was any, was the presence on the photograph of the "department number." But, appellant made no request that the number be removed or covered. We find no prejudicial error.

We now reach the only meritorious contention of appellant; his challenge to Instruction No. 6, the verdict directing instruction.

The evidence clearly established that appellant's participation in the charged offense was that of an operator of the "get-away" automobile, or that he aided and encouraged Smith in the commission of the robbery. Appellant was charged by indictment as a principal, which was permissible under § 556.170 RSMo 1969, *State v. Spica*, 389 S.W.2d 35, 40 (Mo.1965); *State v. Lemon*, 504 S.W.2d 676 (Mo.App.1973), and appellant makes no challenge to the indictment. The court instructed the jury in the form of MAI–CR 2.10 pertaining to the general responsibility of one for the conduct of others. However, Instruction No. 6 is in the form of MAI–CR 7.62, and in its material parts is as follows:

If you find and believe from the evidence beyond a reasonable doubt;

First, that on October 25, 1972, in the City of St. Louis, State of Missouri, National Food Stores, Incorporated, a corporation, in the care and custody of Michael O'Brien owned six hundred and fifty dollars lawful money of the United States, and

Second, that at that time and place the defendant, by means of a deadly and dangerous weapon, took the property from Michael O'Brien against his will by causing him to fear immediate injury to his person, and

Third, that the defendant took the property with the intent to permanently deprive National Food Stores  *  *  * in the care and custody of Michael O'Brien of the property and to convert it or any part of it to his use,

then you will find the defendant guilty of robbery in the first degree by means of a deadly and dangerous weapon.

Rule 20.02(c) provides that "Whenever there is an MAI–CR instruction  *  *  * applicable under the law to the facts, the MAI–CR instruction  *  *  * shall be given or used to the exclusion of any other on the same subject." In this case, it was the State's theory, and the proof was that appellant's total participation in the robbery was that of an aider in that he perhaps served as a lookout and did serve as the operator of the "get-away" automobile. MAI–CR 2.14 entitled "Principals: Aiding or Encouraging, Whether Present or Not," is worded to cover precisely the factual situation of this case. Therefore, there was an "MAI–CR instruction  *  *  * applicable under the law to the facts," and it was not given. Pursuant to Rule 20.02(e) such failure was error, the prejudicial effect of which is to be judicially determined.

If used, MAI–CR 2.14 would have submitted to the jury the issue of whether the defendant "knowingly and intentionally aided or encouraged" another in commission of the charged offense. MAI–CR 7.62 does not contain such language. But where, as here, the accused's participation was limited to that of an aider and encourager, the fact that he intentionally did so was a finding essential to sustain a verdict of guilty. *State v. Grebe*, 461 S.W.2d 265 (Mo. Banc 1970) makes this abundantly clear. In that case the accused was convicted of manslaughter on the basis that she aided and

encouraged her son who made the physical assault which caused the death. The Missouri Supreme Court held: "The State tried appellant as an aider and abettor in this case. [The verdict directing] instruction * * * did not require the jury to find that appellant *intentionally* aided and abetted [the son] in the commission of the act of stabbing [the victim]. We consider appellant's intent in this regard an essential element of the State's case. We hold the instruction [which did not submit the issue of intentionally aiding and abetting] prejudicially erroneous." See also *State v. Lemon,* supra where a submission similar to that in this case was held to be "doubly erroneous" because it did not submit the issue of intent, citing the *Grebe* case, and because no instructional guide was given whereby the jury "could properly apply the abstract principles as contained in [what in this case was Instruction No. 5 in the form of MAI–CR 2.10] to the facts."

The failure of the court to instruct in the form of MAI–CR 2.14 was error, and by reason of the rule of the *Grebe* case we determine that error to have been prejudicial.

Other contentions of appellant need not be ruled on this appeal.

The judgment is reversed and the cause remanded.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.